[Crim. No. 17510. Second Dist., Div. Two. Aug. 5, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES LEWIS SHIRLEY, Defendant and Appellant.

## COUNSEL

Jeanette Christy for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Alan V. Hager, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ROTH, P. J.**—Charles Lewis Shirley and two codefendants charged with kidnaping (Pen. Code, § 207), assault with a deadly weapon (Pen. Code, § 245, subd. (a)), and pandering (Pen. Code, § 266, subd. (i)), having waived a jury, were by the court found guilty of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)) and kidnaping (Pen. Code, § 207). He appeals from the judgment of conviction and the order denying a new trial.[1]

At about 10 p.m. on April 2, 1969, Daisy Saburine went to the second floor apartment of Betty Ann Beverly (Betty) on East 115th Street in Los

---

[1]The order denying a new trial is nonappealable and is dismissed. (Pen. Code, § 1237.)

Angeles. She asked for a female acquaintance, one Shirley Hall (Hall). At approximately midnight, appellant, Richard Dove (Richard), and Hall entered the apartment. The five people were in an upstairs bedroom talking. Hall, and Daisy were arguing over the fact that Daisy had not gone out prostituting with the others the night before. Daisy said, " 'I don't have to go out with you,' " and " 'I don't have to listen to this, and I'm going to leave.' " When Daisy started to leave, Hall began to beat her. Appellant, Richard, and Betty assisted Hall. Appellant hit Daisy in the mouth, cutting her lip and continued to hit Daisy "off and on" with his fist over an unspecified period of time. Appellant and Hall continued to beat Daisy intermittently throughout the night. The beatings took place in various parts of the upstairs of the apartment. In the early morning of the next day appellant and Hall took Daisy downstairs. They removed her clothes and tied her to a round table, stomach down; Daisy was screaming and struggling. Betty then struck Daisy with the cord of a pressing iron. Appellant and Hall burned her buttocks several times with a heated hair-straightening comb.

Daisy "kept going out" but the physical abuse was nevertheless continued for an unspecified period of time. Finally, one of the three hit Daisy on the head with an unidentified object causing her head to bleed. Daisy was then returned upstairs and placed in the bathtub. Appellant, Hall, and Betty ran water in the tub and poured water over Daisy's head to wash the blood out of her hair. Daisy was then taken to a bedroom and grease was put on the burns.

Daisy testified she was later taken downstairs a second time. "And then some of their friends came in together—and I say their friends because I imagine it was all of them friends—came in and he [appellant] turned me around and he said, 'This is what—this is what my bitches get. I brand them.' And he turned me around and was showing the burns."

Daisy was restrained in Betty's apartment for the following two days. Richard who had previously left the apartment returned on the third day. Daisy finally promised she would prostitute for appellant. Thereupon appellant, Hall, and Betty entered Richard's car with Daisy. Richard drove from Betty's apartment on 115th Street to the corner of Western Avenue and 39th Street. Daisy left the car on the corner, pursuant to the understanding reached between her and appellant that she "was supposed to prostitute." Before she was allowed to leave the car the others said they would be watching her. Hall said, "So don't try to get away." The evidence showed that two on one corner and two on another corner of the intersection were actually watching.

A stranger driving his car through the intersection stopped abreast of Daisy. Daisy entered the stranger's car. At her request he took her to her

mother's house. After reaching her mother's house, she then went to General Hospital to have the burns on her buttocks treated. On April 7, 1969, Daisy went to a private physician. He noted "numerous bruises and contusions," infected burns on her buttocks and an infected scalp laceration which were verified by photographs taken by the police in the physician's office.

Daisy was unclear about the time spans between the beatings and burnings. She was certain, however, that she had been in the apartment for three days and that appellant by means of the beatings administered and threats made restrained her from leaving unless she promised to prostitute for him.

Appellant challenges only the sufficiency of the evidence to sustain a conviction of kidnaping (Pen. Code, § 207) under *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225]. *Daniels* had not been decided at the time of trial. However, *Daniels* is retroactive to cases tried before the date of that decision which are on direct appeal. (*People* v. *Ramirez,* 2 Cal.App.3d 345, 355 [82 Cal.Rptr. 665]; *People* v. *Ballard,* 1 Cal.App.3d 602, 606 [81 Cal.Rptr. 742].) Although *Daniels* involved a conviction of Penal Code section 209, its standards apply to violations of Penal Code section 207.

The decisive question before us is whether the facts outlined constituted kidnaping under *Daniels.* In explaining the development of the law in respect of asportation incidental to or inherent in a crime such as robbery, rape or burglary, as distinguished from the crime of kidnaping as defined by Penal Code sections 207 or 209, the *Daniels'* court said, at pages 1137-1139: "Finally, the spirit animating these judicial developments in the law of kidnaping has also manifested itself in new legislative proposals and enactments. Section 212.1 of the Model Penal Code, adopted by the American Law Institute in 1962, provides that 'A person is guilty of kidnaping if he unlawfully removes another from his place of residence or business, or a *substantial* distance from the vicinity where he is found, or if he unlawfully confines another for a *substantial* period in a place of isolation,' for the purpose, inter alia, of terrorizing or holding the victim for ransom, or of facilitating the commission of a felony. (Italics added.) . . .

"The Model Penal Code definition of kidnaping was adopted in virtually identical terms by the draftsmen of the recent revision of the New York criminal code. (Proposed New York Penal Law (1964), § 140.15) The New York Legislature ultimately enacted a somewhat more complicated statutory scheme (N.Y. Pen. Law, art. 135 (eff. Sept. 1, 1967)), but pre-

served the Model Code requirement that the asportation be 'substantial.'[13] Commenting on the new statute in *Lombardi*,[2] the Court of Appeals explained (at p. 209 of 229 N.E.2d) that 'The Legislature has undertaken to bring more certainty than the court was able to achieve in *Levy*[3] to the problem of when confinement and restraint are significant enough by themselves to warrant a kidnaping prosecution.' Similar legislative undertakings to provide 'more certainty' and detail than is ordinarily appropriate in an appellate opinion are not unknown in California. (Compare *Muskopf* v. *Corning Hospital Dist.* (1961) *supra*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], with the 1963 sovereign immunity legislation (Stats. 1963, ch. 1681).)"

Footnote 13 referred to in the immediately foregoing excerpt is enlightening and is as follows:

"Thus in New York a person is guilty of simple kidnaping when he 'abducts' another person (§ 135.20); to 'abduct' means to 'restrain' by concealment or force (§ 135.00, subd. 2); and to 'restrain' means to restrict a person's movements 'in such manner as to interfere *substantially* with his liberty' (italics added; § 135.00, subd. 1). A person is guilty of aggravated kidnaping when he thus 'abducts' another person and when (1) his intent is to demand ransom, or (2) he restrains the victim for more than 12 hours with intent to terrorize the victim or to facilitate the commission of a felony (§ 135.25)."

Guided by the foregoing language of *Daniels* it appears to us that the facts recited justified the trial judge in finding appellant guilty of kidnaping.

Daisy was not technically "asported" to Betty's apartment on 115th Street. She was restrained against her will for three days from leaving the apartment. While in the apartment Daisy against her will was "asported" up and down the stairs and then after the third day, when she agreed to prostitute for appellant, "asported" from 115th Street to 39th Street and Western Avenue. When the automobile in which she was confined and driven arrived at 39th Street and Western Avenue, she was deposited on one of the corners of that intersection, and was further restrained by the surveillance of appellant and his cohorts who watched her movements from different corners of the same intersection. The avowed purpose of the restraint in Betty's apartment and the instances of literal asportation in the apartment and in the automobile were to compel a promise to prostitute.

[2]*People* v. *Lombardi* (1967) 20 N.Y.2d 266 [282 N.Y.S.2d 519, 229 N.E.2d 206], involved transportation of three rape victims from Manhattan to Queens—held not kidnaping.

[3]*People* v. *Levy* (1965) 15 N.Y.2d 159 [256 N.Y.S.2d 793, 204 N.E.2d 842], involved asportation in a robbery—held not kidnaping.

Under section 212.1 of the Model Penal Code quoted with favor in *Daniels* a kidnaping occurs if a defendant ". . . unlawfully confines another for a substantial period in a place of isolation for the purpose . . . of facilitating a felony."

Further *Daniels* in footnote 13 (p. 1139) refers to recent New York statutes which state that abduct means to restrain and restrain means to restrict a person's movements in such a manner as to interfere substantially with his liberty.

In *People* v. *Ramirez,* 2 Cal.App.3d 345 [82 Cal.Rptr. 665] (hg. den. February 18, 1970), tried to a jury, the court was faced with the problem of whether the asportation and holding of a female for the purposes of rape constituted the crime of kidnaping. The jury found Ramirez guilty of kidnaping. The pertinent facts in *Ramirez* appear from the court's language at page 356: ". . . at bench, the evidence would support a finding that the victim was carried a substantial distance from the place where she was forced into the car. Here, detention was continued beyond the point at which defendant, because of the presence of the police, abandoned his attempt at rape. At that point the victim's request that the car be stopped was refused. Not only was she detained, but again she was carried a substantial distance and away from those who would have freed her from detention; the manner of the detention and movement substantially increased the risk of harm to her over and above that necessarily incident to the crime of rape—the risk being so great that the driver of the car met his death as a result.

"We cannot say as a matter of law that the victim in the present case was not removed a substantial distance, nor can we say that the risk of bodily harm was not substantially greater than that necessarily involved in the commission of rape by force and violence, and that the detention was limited to that incident to the attempted rape. . . .

"The issue in the case at bench was not presented to the jury under the rules laid down in *Daniels.* Rather, the jury was instructed as follows: 'To constitute the crime of kidnaping, as charged in Count I of the Information, there must be a carrying, or otherwise forcibly moving, for some distance of the person who, against his will, is stolen or taken into the custody or control of another person, but the law does not require that the one thus stolen or taken be carried or moved a long distance or any particular distance.'

"Under such an instruction, it is possible a jury might find a defendant guilty of a violation of section 207 whose victim had not been moved or carried a substantial distance.

"The jury was earlier instructed in the language of section 207 as follows: 'Every person who unlawfully and forcibly steals, takes, or arrests any other person in this state, and carries him into another country, state or county, or into another part of the same county, doing so against the will and without the consent of the person so carried, is guilty of kidnaping.'

"Under that instruction, too, it is possible a defendant might be found guilty of violating section 207 although the victim had not been moved a substantial distance, and although the moving might have been only incidental to the commission of another crime."

Since the case at bench was tried without a jury it is fair to assume that the trial judge at bench had in mind the law as set out in the *Ramirez* instructions to the jury.

Even though *Ramirez* was tried to a jury the appellate opinion disposed of the question of kidnaping as follows: "The question arises, therefore, whether the cause should be reversed as to the kidnaping judgment and remanded for retrial on that charge under instructions that the jury find whether the victim had been removed a substantial distance from the place where she was seized, whether the removal and detention of the victim were merely incidental to the crime of attempted rape, and whether there had been a risk of bodily harm substantially greater than that necessarily involved in a rape by force and violence.

". . . . . . . . . . . .

"Literally speaking, the instructions given were not a distortion of the language of section 207.

"Therefore, since the presumed error was in the instructions to the jury, the test to be applied is that of article VI, section 13 of our Constitution, that is, whether there has been a miscarriage of justice. '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

"We are of opinion that it is reasonably probable that a result more favorable to defendant would not have been reached in the absence of the error." (P. 357.)

A hearing in *Ramirez* having been denied and the case at bench having been tried by the court, it appears to us that the language quoted from and

the disposition made in *Ramirez* applies in all respects with even more emphasis to the facts of the case at bench.

We are satisfied that, although the trial court did not at the time of its judgment have the benefit of *Daniels,* that it is not probable that a result more favorable would have been reached if that decision had been final before the trial.

The trial court found appellant guilty of assault by means of force likely to produce great bodily injury, a violation of Penal Code section 245, subdivision (a). The judgment erroneously recites that appellant was found guilty of violating Penal Code section 245, subdivision (b). This obvious clerical error should be corrected. (*People* v. *Chavez,* 268 Cal.App.2d 381, 386 [73 Cal.Rptr. 865].)

The judgment of conviction of kidnaping is affirmed. The trial court is directed to correct the clerical error with respect to the judgment of conviction of count II. The appeal from the order denying the motion for a new trial is dismissed.

Herndon, J., and Fleming, J., concurred.