[Crim. No. 8617. First Dist., Div. One. June 15, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
BILLY RAY LOBAUGH, Defendant and Appellant.

**COUNSEL**

R. Eugene Vernon, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Louise H. Renne, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Billy Ray Lobaugh was convicted by jury verdicts of seven felony charges which may be described as follows:

Count 1: Felony drunk driving, causing bodily injuries to one Russell Hanson (Veh. Code, § 23101);

Count 2: Felony drunk driving, causing bodily injuries to one Ellen Mae Waldecker (Veh. Code, § 23101);

Count 3: Felony drunk driving, causing bodily injuries to one Charles Leonard Goggins (Veh. Code, § 23101);

Count 4: Felony hit and run (Veh. Code, § 20001);

Count 5: Kidnaping (Pen. Code, § 207.); a lesser offense included within a charge of kidnaping one Donald Adcock for the purpose of robbery (Pen. Code, § 209);

Count 6: Kidnaping of one Carol Ann Geer for the purpose of robbery (Pen. Code, § 209);

Count 7: Robbery (2d degree) of one Donald Adcock (Pen. Code, § 211).

Lobaugh was thereafter sentenced to state prison on each of the seven counts, with the provision that the execution of sentence on counts 1 and 2 be stayed until the sentence and conviction of count 3 shall become final. With the exception of counts 1 and 2, all sentences were ordered to run concurrently with each other. The appeal is from the judgment.

We first direct our inquiry to the contention that the evidence was insufficient to sustain the Vehicle Code violations, counts 1, 2, 3 and 4.

Under the "substantial evidence" rule (see *People* v. *Reilly,* 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]) the jury could, and we must presume they did, find the following facts to be true.

Lobaugh and three other persons, Russell Hanson, Ellen Mae Waldecker and Charles Leonard Goggins (named respectively in counts 1, 2 and 3) met around 5 or 5:30 p.m. on July 7, 1964. They started driving around in Lobaugh's automobile. The party purchased two quarts of wine and later bought another gallon. Throughout the evening they took turns drinking the wine. As the night progressed Lobaugh changed his behavior from "pretty nice" to "sort of mean." Around 10:30 p.m. Lobaugh was driving the car at a very fast speed estimated at 90 miles per hour. To one of the passengers it appeared that he was either drunk or just driving in a "crazy" manner. At that point Lobaugh's car, passing another car, went out of control and off the road coming to rest upside down and ablaze. Each of the passengers suffered serious bodily injuries in the accident.

Extricating himself from the vehicle, and without rendering aid to the passengers, one of whose clothing was afire, Lobaugh made his way back to the road. A passing motorist saw the blazing automobile and stopped his car. As he got out Lobaugh appeared and "said he wanted me to take him to the Pittsburg Hospital." Lobaugh, who had "a slight liquor smell," got in the car. As they drove off he asked the driver to "look for a fellow

whom he said had fallen out of the car" onto the road. After being driven about a quarter mile Lobaugh grabbed the driver around the neck and said, "This is a gun. Do what I tell you and you won't be hurt." The driver was again told to take Lobaugh to the hospital. Asked about Lobaugh's appearance the driver testified, "it appeared that he was injured. . . . I saw some blood on his nose. It seemed to be trickling down his nose. He must have been cut, or something, I don't know."

Vehicle Code section 23101, the violation of which was charged in counts 1, 2 and 3, provides: "Any person who, while under the influence of intoxicating liquor, or under the combined influence of intoxicating liquor and any drug, drives a vehicle and when so driving does any act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury to any person other than himself is guilty of a felony. . . ."

From the evidence we have related the jury could reasonably have concluded that Lobaugh (1) was driving his vehicle "under the influence of intoxicating liquor," (2) that while doing so he violated Vehicle Code section 22349 (65-mile-per-hour maximum speed limit), section 22350 (basic speed law) and section 23103 (reckless driving), (3) thereby proximately causing bodily injury to each of his three passengers.

Lobaugh's first contention is that at most, one, not three, section 23101 violation is established by the evidence.

At least initially in our consideration of this point we are not concerned with multiple punishment or multiple prosecution for an act or acts resulting in more than one crime. Rather the question is whether violation of section 23101 results in as many offenses as there are persons injured. Pointing to the three persons injured by Lobaugh's conduct, the People urge the familiar rule that where a course of criminal conduct results in injury to multiple victims, multiple offenses are committed. (See *Neal* v. *State of California,* 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839]; 2 Witkin, Cal. Crimes, § 954, pp. 908-909.)

We have concluded that a person who has violated section 23101 whether one, or several, persons be injured thereby, has committed but one offense. Unlike the usual "multiple victim" case, here the fundamental concern of the state is not the outrage done the victims, but rather the prevention of "drunken driving" and the punishment of those who so conduct themselves. It was said in *People* v. *Chatham,* 43 Cal.App.2d 298, 300 [110 P.2d 704] (referring to Veh. Code, §501, predecessor to § 23101), ". . . it is not the receiving of the injury that concerns the state, but the *causing* of such injuries which the state seeks to minimize." The unlawful

act denounced by the Vehicle Code is the "mere act of driving a vehicle upon a public highway while intoxicated"; the act is either a misdemeanor (Veh. Code, § 23102, formerly § 502), or a felony (Veh. Code, § 23101, formerly § 501), depending on whether personal injuries result therefrom. (See *People* v. *Thurston,* 212 Cal.App.2d 713, 717 [28 Cal.Rptr. 254]; *In re Ryan,* 61 Cal.App.2d 310, 313 [142 P.2d 769]; *People* v. *Levens,* 28 Cal.App.2d 455, 459 [82 P.2d 698]; *People* v. *Freeman,* 16 Cal.App.2d 101, 103 [60 P.2d 333].) The felony section (Veh. Code, § 23101, formerly § 501) simply "graduate[s] the punishment according to the [more serious] consequences of the forbidden act. . . ." (*Layport* v. *Rieder,* 37 Cal.App.2d Supp. 742, 746 [94 P.2d 96], disapproved on other grounds in *Heald* v. *Friis-Hansen,* 52 Cal.2d 834, 839 [345 P.2d 457].)

We are cognizant of the result reached in *People* v. *Young,* 224 Cal.App. 2d 420, 424 [36 Cal.Rptr. 672], holding that where personal injury to two persons resulted from one act in violation of section 23101, multiple convictions and punishment are proper. But there it was simply urged that Penal Code section 654 "does not prohibit multiple punishment which concerns multiple victims," a general proposition with which the court concurred. And the authorities we have cited appear neither to have been presented to nor considered by the court; the holding of *People* v. *Young* is therefore of questionable authority. (See 3 Witkin, Cal. Procedure (1954) p. 2456.)

Since Lobaugh has been sentenced on the count 3, section 23101 charge, with execution of sentence stayed on the similar counts 1 and 2, the convictions on the latter counts should and will be set aside.

█ Next, Lobaugh contends that no Vehicle Code section 20001 violation, as charged by count 4, was established by the evidence.

Vehicle Code section 20001, the so-called "felony hit and run" statute, provides, as relevant: "The driver of any vehicle involved in an accident resulting in injury to any person, other than himself, or death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004. [¶] Any person failing to comply with all the requirements of this section under such circumstances is guilty of a public offense. . . ."

Section 20003, among other things, requires that such a driver ". . . shall render to any person injured in the accident reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary. . . ."

As indicated Lobaugh left the scene of the accident ambulatory and

apparently only slightly injured. He left behind him three injured passengers, one of whom suffered third degree burns over 35 percent of his body, lost the use of his left arm and hand, and was required to have his left leg amputated. He made no effort to render the assistance required by sections 20001 and 20003. From this evidence the jury reasonably found a violation of Vehicle Code section 20001 as charged in count 4.

The additional section 20001 contention based upon *Byers* v. *Justice Court,* 71 Cal.2d 1039 [80 Cal.Rptr. 553, 458 P.2d 465], is without merit; that decision was overruled by the United States Supreme Court in *California* v. *Byers,* 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535].

It follows that count 4 of the information must be affirmed.

We proceed now to a consideration of Lobaugh's kidnaping and robbery convictions under counts 5, 6 and 7. Substantial evidence found in the record and relating to those convictions now follows.

Our earlier factual narrative ended with Lobaugh threatening a passing motorist with a gun and asking to be taken to the hospital. The motorist was Donald Adcock. As they proceeded Lobaugh said he wanted Adcock's identification. Adock produced his wallet whereupon Lobaugh looked at some identification and "through the currency part of [the] wallet," and then "stuck it in his pocket." Further on Adcock was able to open the door of the car and jump out. Lobaugh then drove off, keeping "the wallet, money and all." (The wallet was later found in Lobaugh's possession by the police.) This incident was the subject of the counts 5 and 7 convictions of kidnaping and robbery, respectively.

The count 6 conviction, kidnaping for the purpose of robbery (Pen. Code, § 209), was based upon the following testimony.

Somewhat later that evening Mrs. Carol Ann Geer was driving along a road looking for her husband who was late getting home from work. Another car cut in front of her and forced her to stop. Lobaugh emerged from the other vehicle saying he needed help. He then opened the door of Mrs. Geer's car and said, "Move over, I want to drive." The lady screamed while Lobaugh told her to "be quiet and to shut up." She managed to escape from her car, taking her purse with her; while doing so Lobaugh had grabbed and ripped her jacket. She was pursued by Lobaugh and caught and dragged back to the car; she had apparently dropped her purse while running. Mrs. Geer continued to scream and was again told by Lobaugh to "shut up." He said that he had been in an accident, and that "he had to get away, that the police were after him." Mrs. Geer was concerned about

her husband. In response to her questions, Lobaugh stated that he had had an accident with a fellow driving a black Ford and that he thought the man was dead. Since Mrs. Geer's husband was driving a black Ford, she imagined that the dead man might be her husband. She also believed that if she went with appellant, she could later escape and notify the police. She then asked Lobaugh if she could drive the car and he agreed. As she drove she saw a car coming from the nearby driveway, but Lobaugh told her to "keep driving" and that he had a gun to use if she did not do what he told her. As she was driving he continued to say that he had been in an accident and that the fellow who was driving had jumped out. He also told Mrs. Geer to drive "normal" so no one would think anything was wrong. As Mrs. Geer continued driving Lobaugh asked where her purse was located. When she responded that "it's in between the seats," he attempted to find it but could not. He then became excited and accused Mrs. Geer of purposely dropping it on the street in order to let people know who she was. She finally saw a police car. As the police car started to follow them, Lobaugh told her to turn left and drive in a normal fashion. However, "all of a sudden" approximately six or eight police cars converged and forced her car to stop. The police, with guns drawn, forced Lobaugh to get out of the car and placed him under arrest.

Lobaugh's conviction of the robbery (count 7) of Donald Atkins was clearly supported by the evidence. In his briefs on appeal Lobaugh makes no contention to the contrary.

■ We have, however, concluded that Lobaugh's two kidnaping convictions—count 5, kidnaping of Donald Adcock (Pen. Code, § 207), and count 6, kidnaping of Carol Ann Geer for the purpose of robbery (Pen. Code, § 209)—must be reversed. Our reasons follow.

Lobaugh's trial was concluded on October 26, 1965.

In its jury instructions the court defined "kidnaping" (count 5) in this manner:

"Every person who unlawfully and forcibly takes any other person in this state and carries him into another country, state or county, or into another part of the same county, doing so against the will and without the consent of the person so carried, is guilty of kidnaping. [¶] To constitute the crime of kidnaping there must be a carrying or otherwise forcibly moving for some distance of the person who, against his will, is taken into the custody or control of another person, but the law does not require that the one thus taken be carried or moved a long distance or any particular distance."

Defining the crime of "kidnaping for the purpose of robbery" (count 6) the jury were told:

"Any person who kidnaps or carries away another to commit robbery is guilty of kidnaping with intent to commit robbery, . . . The necessary elements of this crime are: a forcible carrying or moving of another person, against his will, for some distance with the specific intent and purpose to carry out and commit a robbery, although the intent to commit robbery need not be the only intent and purpose."

On October 2, 1969, the California Supreme Court in *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], redefined the elements of the crime of kidnaping for the purpose of robbery, as proscribed by Penal Code section 209. It held (p. 1139) that the offense is not committed where "the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself. . . ." In *People* v. *Mutch,* 4 Cal.3d 389 [93 Cal.Rptr. 721, 482 P.2d 633], it was held that the rule of *Daniels* was fully retroactive, even to the extent of granting post-conviction relief thereunder.

The Lobaugh jury then were erroneously instructed as to count 6. Since we cannot say, as a matter of law, that Lobaugh's asportation of Mrs. Geer was a kidnaping for the purpose of robbery, the cause will be remanded to the superior court for a retrial of that issue.

In *People* v. *Williams* (1970) 2 Cal.3d 894 [88 Cal.Rptr. 208, 471 P.2d 1008], as here on count 5, a kidnaping for the purpose of robbery (Pen. Code, § 209) had been reduced to "simple kidnaping." (Pen. Code, § 207.) Nevertheless the court held that the test of *People* v. *Daniels* applied; to establish such a simple kidnaping it must also appear that the movements of the victim were not merely incidental to the commission of the robbery and did substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself. In this context also the jury in the instant case were erroneously instructed. Again we cannot say, as a matter of law, that the asportation of Donald Adcock was not merely incidental to the commission of the robbery or that it did substantially increase the risk of harm. By clear implication of *People* v. *Mutch, supra,* 4 Cal.3d 389, *People* v. *Williams* must also operate retroactively. It follows that the kidnaping conviction of count 5 must likewise be remanded for a retrial under proper instructions.

Resolution of other points raised by Lobaugh relating to counts 5 and 6 has become unnecessary.

The judgment is affirmed as to the convictions on counts 3, 4 and 7; it is reversed as to the counts 1, 2, 5 and 6 convictions.

Molinari, P. J., concurred.

**SIMS, J.**—I concur in the decision reversing the convictions on counts 1 and 2. It is clear that Vehicle Code section 23102 proscribes *"any act."* The question of *"bodily injury"* is only of materiality in that it aggravates the offense. The fact that there are several victims cannot transform the single act into multiple offenses.

I dissent from the decision insofar as it reverses the convictions and sentences on counts 5 and 6.

Although the instructions in this case did not contain the refinements engrafted on the statutory law by *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], and applied in *People* v. *Mutch* (1971) 4 Cal.3d 389 [93 Cal.Rptr. 721, 482 P.2d 633], I do not find any prejudice in that omission.

Adcock was forced at what he thought was gunpoint to transport the defendant and himself for an appreciable distance. The jury rejected the prosecution's theory that such transportation was for the purpose of robbery. It apparently then was for the purpose of securing transportation for either the stated purpose of going to a hospital other than that to which the victim was willing to take the defendant, or for the purpose of enabling the defendant to escape criminal responsibility for the accident (Veh. Code, § 20001). Since the point is not raised I do not venture an opinion as to whether the defendant can be sentenced for both simple kidnaping (Pen. Code, § 209), and felony hit and run (Veh. Code, § 20001) when the former is committed with the intent and objective of accomplishing the latter. In any event they are separate offenses and authorize separate convictions.

The jury's verdicts establish that the robbery of Adcock was apparently an afterthought and not related to the kidnaping so the defendant may be convicted and sentenced for both kidnaping and robbery.

Although it cannot be said as a matter of law that the kidnaping of Mrs. Geer was a kidnaping for the purpose of robbery, there was ample evidence to sustain that finding. It does appear that she was forced to move an appreciable distance, and it is incomprehensible to me that a jury could possibly find that she was not subjected to an increased risk of harm under the circumstances revealed by the evidence.

I would affirm the judgment on counts 5 and 6 for the lack of prejudice under both the *Watson* and *Chapman* tests. (See *People* v. *Shirley* (1970) 10 Cal.App.3d 268, 274-275 [88 Cal.Rptr. 853]; and *People* v. *Ramirez* (1969) 2 Cal.App.3d 345, 356-357 [82 Cal.Rptr. 665].)

A petition for a rehearing was denied July 12, 1971. Sims, J., was of the opinion that the petition should be granted.