[No. D003100. Fourth Dist., Div. One. Dec. 22, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK ROSS MITCHELL, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of section III.

COUNSEL

Charles R. Khoury, Jr., for Defendant and Appellant.

George Deukmejian, Attorney General, John W. Carney and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**LEWIS, J.**—A jury found Mark Ross Mitchell guilty of driving under the influence of alcohol and/or drugs with resulting injury, a violation of Vehicle Code section 23153, subdivision (a), which reads: "It is unlawful for any person, while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver."

The information charged, in part, that in driving under the influence Mitchell "committed an act forbidden by law, to wit, V.C. 22350 [violation of the basic speed law[2]] and 23109(a) [engaging in a speed contest[3]], and

---

[2]Vehicle Code section 22350 provides: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

[3]Vehicle Code section 23109, subdivision (a), provides: "No person shall engage in any motor vehicle speed contest on a highway. As used in this section, a motor vehicle speed contest includes a motor vehicle race against another vehicle, a clock, or other timing device. For purposes of this section, an event in which the time to cover a prescribed route of more than 20 miles is measured, but where the vehicle does not exceed the speed limits, is not a speed contest."

neglected a duty imposed by law, which proximately caused bodily injury to another."

After the trial court granted probation to Mitchell on condition, among others, that he spend 30 days in county jail and pay a $1,000 fine, he appeals. He contends the trial court committed reversible error in not instructing the jury, sua sponte, it must unanimously agree on the acts forming the offense, violation of either the basic speed law or the speed contest prohibition or both, and there was prejudicial prosecutorial misconduct. We affirm.

I

Between 7 and 7:30 in the evening on May 5, 1984, two teenage girls, Colleen W. and Holly R., both age 17, met some friends and attended a play at the Army-Navy Academy in Carlsbad. Before they went to the play, the girls met Mitchell, a friend of Colleen who noticed Mitchell was very drunk, swaying, staggering, slurring words, real loud and acting silly. The girls watched part of the play and at about 9 p.m. the two girls, with Mitchell, James Wiley and another person, went to a Carlsbad motel room. For about 45 minutes in the room the group drank mixed drinks and beer and smoked some marijuana by sharing a marijuana cigarette among the five persons there. All five drank about the same amount and Colleen had four or five drinks at the most.

Mitchell, with Colleen accompanying him, drove to the academy to pick up some friends. Colleen knew Mitchell was drunk, but that was not on her mind at the time. Before they returned to the motel with the friends, Colleen noticed Mitchell's car was running fine.

Soon after returning to the motel, Colleen and Mitchell left in his Pinto, and Holly, a person named Kent and Wiley left in Wiley's Mercedes. Mitchell and Wiley with their passengers drove to a liquor store, then drove, southbound on Highway 101. Soon, Mitchell and Wiley started racing each other, at times putting their cars side by side and at other times right behind each other, changing relative positions, and reaching speeds Colleen estimated at 70 miles per hour. Holly looked at the speedometer in Wiley's car and saw they were going 80 to 85 miles per hour.

In Leucadia, Mitchell and Wiley turned their cars around and headed northward along the same highway. They continued racing and after Colleen asked Mitchell to slow down, he reached speeds of 80 to 85 miles per hour. At this point Wiley's car was a little in front of Mitchell's.

At a curve in the highway at Palomar Airport Road, marked with a 35 miles per hour speed limit, Mitchell was driving 95 miles per hour. Mitchell lost control of his car, which flipped over and crashed, throwing both Mitchell and Colleen from the car and seriously injuring them.

A urine sample taken from Mitchell at 1:50 a.m. produced a blood alcohol level result of .12 percent. A blood alcohol expert estimated Mitchell's blood alcohol level at between .16 and .18 percent at 11 p.m. when he failed to negotiate the curve and crashed.

## II

Mitchell's contention the trial court committed reversible error in not instructing the jury sua sponte it must unanimously agree on which act he committed, unsafe speed or speed contest, is not well taken.[4]

It is true, of course, that a defendant's right to a jury trial includes the right to have the jury agree on "a single, specific act" as the basis for the conviction. (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 280 [182 Cal.Rptr. 354, 643 P.2d 971], and cases cited; see also *People* v. *Failla* (1966) 64 Cal.2d 560, 568 [51 Cal.Rptr. 103, 414 P.2d 39].)

The defect in Mitchell's argument is his premise that separate "acts" are involved in the Vehicle Code section 23153, subdivision (a), offense when there is pleaded more than one "act forbidden by law or neglect [of] any duty imposed by law in the driving of the vehicle." In *Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 349-350 [211 Cal.Rptr. 742, 696 P.2d 134], the essence of the felony drunk driving offense is described in terms of "one instance" of driving while intoxicated. *Wilkoff* approves the holding of *People* v. *Lobaugh* (1971) 18 Cal.App.3d 75 [95 Cal.Rptr. 547], that "one instance of drunk driving is chargeable as only one count of felony drunk driving (i.e., one count of § 23153, subd. (a) and one count of subd. (b)) even if more than one person is injured thereby." (38 Cal.3d at p. 349, fn. omitted.) In a footnote *Wilkoff* defines its use of " 'one instance' of drunk driving" as referring to *"one* volitional *act of driving."* (*Wilkoff, supra,* 38 Cal.3d at p. 349, fn. 4, italics added.) *Wilkoff* proceeds to say: "The act

---

[4]Mitchell suggests the court should have given a modified version of CALJIC No. 17.01, such as: "The defendant is charged with the offense of driving a vehicle while under the influence of an alcoholic beverage and a drug and the combination thereof, and in so doing, committed an act forbidden by law either exceeding the basic speed law (Vehicle Code Section 22350) or engaging in a motor vehicle speed contest on a street or highway (Vehicle Code Section 23109(a)). He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of the above acts, but, in order to find the defendant guilty, all the jurors must agree he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

prohibited by section 23153 is the act of driving a vehicle while intoxicated and, when so driving, violating any law relating to the driving of a vehicle. In *Lobaugh* the court found that this act was committed only once, since there was only one driving incident, despite the fact that injuries to several persons were proximately caused thereby. The emphasis in *Lobaugh* was on *the act constituting the gravamen of the offense* [italics ours] since, as we have said, the number of times the act is committed determines the number of times the statute is violated: 'The unlawful act denounced by the Vehicle Code *is the "mere act of driving a vehicle upon a public highway while intoxicated* [italics ours]"; the act is either a misdeameanor or a felony, depending on whether personal injuries result therefrom. The felony section simply "graduate[s] the punishment according to the [more serious] consequences of the forbidden act."' (*People* v. *Lobaugh, supra,* 18 Cal.App.3d at pp. 79-80, citations omitted, brackets in original.) The concurring opinion of Justice Sims further pointed out that '[t]he question of "*bodily injury*" is only of materiality in that it aggravates the offense [from a misdemeanor to a felony]. The fact that there are several victims cannot transform the single act into multiple offenses.' (*Id.,* at p. 84, italics in original.)" (38 Cal.3d at p. 349.) Again *Wilkoff* states: "The district attorney takes issue with a statement in *People* v. *Lobaugh*—removed from its context—that '[u]nlike the usual "multiple victim" case, here *the fundamental concern of the state is not the outrage done the victims, but rather the prevention of "drunken driving" and the punishment of those who so conduct themselves.*' (*People* v. *Lobaugh, supra,* 18 Cal.App.3d at p. 79.) The district attorney concludes from this sentence that the court in *Lobaugh* mistakenly believed that injuries caused by drunk drivers were only a secondary concern of the Legislature. However, the passage immediately following the quoted sentence shows that the court was merely expressing the analytical notion that *the act prohibited by the statute was the act of driving, not the act of injuring persons.* It is preposterous to suggest—and the court in *Lobaugh* did not do so—that the Legislature somehow prohibited drunk driving for its own sake, and not because of the untold injuries it causes to citizens of the state. Injury to another person is, in fact, the basis upon which the offense of drunk driving is enhanced to a felony." (38 Cal.3d at p. 350, italics added, fn. omitted.)

█ This being the rule concerning the nature of the drunk driving offense, it follows that the statute's reference to "act forbidden by law," just as in its reference to bodily injury, involves only a definitional refinement of the offense, not a legislative determination that a statutory violation such as unsafe speed or speed contest is a separate act from the standpoint of the gravamen of the offense which is, simply, driving while intoxicated.

As the Attorney General argues, the charges of violating the basic speed law and engaging in a speed contest are merely theories of guilt proposed

by the prosecution, as to which the rule is the jurors need not be instructed that to return a verdict of guilty they must all agree on the specific theory—it is sufficient that each juror is convinced beyond a reasonable doubt that the defendant is guilty of the crime charged as it is defined by the statute. (*People* v. *Failla, supra,* 64 Cal.2d 560, 569 (burglary, intent on entry); *People* v. *Milan* (1973) 9 Cal.3d 185, 195 [107 Cal.Rptr. 68, 507 P.2d 956] (murder, premeditated or felony murder); see also *People* v. *Nor Woods* (1951) 37 Cal.2d 584, 586 [233 P.2d 897] (theft, by trick or device or by false pretenses); *People* v. *Pitmon* (1985) 170 Cal.App.3d 38, 53 [216 Cal. Rptr. 221] (oral copulation, by force or by duress); *People* v. *Wright* (1968) 268 Cal.App.2d 196, 198 [73 Cal.Rptr. 692] (possession of marijuana, in car or thrown over cliff).)

This court suggested in *People* v. *Kent* (1981) 125 Cal.App.3d 207, 213 [178 Cal.Rptr. 28], the unanimity instruction as to a single act need not be given where the acts proved are "just alternate ways of proving a necessary element of the *same offense,*" and do not in themselves constitute separate chargeable offenses. The unsafe speed and speed contest elements of the drunk driving charge here fall within the category of alternate ways of proving a necessary element of the same drunk driving charge. It follows under this analysis the instruction was not required.

Even assuming the felony drunk driving crime charged here properly could be viewed as encompassing separate acts of driving at an unsafe speed on the one hand and driving in a speed contest on the other, the case squarely fits within the "continuous crime" exception to the rule requiring a unanimity instruction as to each act. (See *People* v. *Diedrich, supra,* 31 Cal.3d 263, 282; *People* v. *Mota* (1981) 115 Cal.App.3d 227, 231-234 [171 Cal.Rptr. 212]; *People* v. *Heideman* (1976) 58 Cal.App.3d 321, 333 [130 Cal. Rptr. 349]; *People* v. *Wright, supra,* 268 Cal. App.2d 196, 198.) There was here no substantial separation in time or place in connection with Mitchell's driving while intoxicated as he rounded the curve at Palomar Airport Road driving at an unsafe speed, trying to overtake Wiley's car in a speed contest. Mitchell committed a continuing offense. (*People* v. *Knight* (1939) 35 Cal.App.2d 472, 474 [96 P.2d 173]; and see examples cited in *People* v. *Mota, supra,* 115 Cal.App.3d 227, 232.)

We conclude the trial court was not required to instruct the jury sua sponte that they must reach a unanimous verdict on the specific law violation, unsafe speed or speed contest or both, before they could find Mitchell guilty of the drunk driving offense. Accordingly, Mitchell's contention in this regard fails.

### III*

. . . . . . . . . . . . . . . . . . . . .

Judgment affirmed.

Wiener, Acting P. J., and Todd, J., concurred.

---

*See footnote, *ante,* page 216.