[No. H033079. Sixth Dist. June 17, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
YOGESHWAR YOGI DATT, Defendant and Appellant.

944

### Counsel

Vertner & Dell and Victor D. Vertner for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Linda M. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

### Opinion

**MIHARA, J.**—Defendant Yogeshwar Yogi Datt was convicted by jury trial of reckless evading (Veh. Code, § 2800.2, subd. (a)), resisting an officer (Pen.

Code, § 148, subd. (a)(1)), being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)), possession of controlled substance paraphernalia (Health & Saf. Code, § 11364), and driving with a suspended license (Veh. Code, § 14601.1, subd. (a)). The court found true allegations that defendant had suffered four prior felony convictions for which he had served separate prison terms. (Pen. Code, § 667.5, subd. (b).) Defendant was committed to state prison for a term of seven years. On appeal, defendant makes two contentions.[1] He claims that the trial court prejudicially erred in instructing the jury that it need not unanimously agree on which Vehicle Code violations supported the "willful or wanton" element of the evading count. Defendant also maintains that his trial counsel was prejudicially deficient in failing to present expert testimony on eyewitness identification. We find no instructional error and no deficiency of counsel and affirm the judgment.

## I. Factual Background

About 2:00 or 2:30 a.m. on September 30, 2007, Santa Clara County Deputy Sheriff Ramon Marquez was on patrol in a marked patrol vehicle. He observed a purple Honda Civic containing two men who initially appeared to be Hispanic. Marquez considered the Honda "suspicious," so he contacted his dispatcher to check on the registration for the license plate number of the Honda. Although the Honda's license plate bore a registration tab indicating that it was registered through December 2007, Marquez was informed by his dispatcher that the registration for the Honda's license plate number had expired in March 2007. Upon learning that the Honda's registration had expired, Marquez attempted to stop the Honda by activating his lights and siren. The Honda sped off into a residential area, disregarded multiple stop signs and two stoplights, "broke traction with the asphalt in violation of Vehicle Code section law [sic] 23109 which is exhibition of speed," was driven on the shoulder, was twice driven in the opposite lane of travel, and was driven at speeds between 45 and 100 miles per hour in an area with a posted speed limit of 25 miles per hour.

Marquez pursued the Honda and illuminated it with his spotlight. Midway through the pursuit, the Honda slowed down, and the passenger opened the window, stuck his hand out, and sprinkled a powdery substance on the ground. The pursuit lasted for 18 minutes, and it ended when the Honda went down a "dead-end" road. At that point, the driver got out of the Honda, looked back at Marquez, ignored Marquez's order to stop, and fled north-bound through a dry creek. The passenger stayed in the Honda. Marquez "focused [his] attention on the driver," and "took a good look at the driver for

---

[1] He also contends that the trial court erred in denying his new trial motion. Since his new trial motion was based solely on the same two issues that he raises on appeal, this appellate contention is superfluous.

description purposes." Marquez was about 20 feet away from the driver, and the patrol car's spotlight was focused on the driver. Marquez observed the driver for about 3.5 seconds and perceived the driver to be an adult male, six feet tall, and slender, who was wearing dark pants and a black "windbreaker type" jacket. He also noticed that the driver had a ponytail. The driver "had a very distinctive look." Before the driver left the Honda, Marquez had thought he looked Hispanic, but when he left the Honda Marquez saw that "he didn't quite look Hispanic and his complexion was a little darker, and I broadcasted that he was black."

Immediately after the driver fled, Marquez directed other units to set up a perimeter around the area into which the driver had fled. He provided a description of the driver as a Black male adult, six feet to six feet three inches tall, wearing dark clothing and a black jacket. He described the driver as "Black" because police procedure limited him to just four "race" options: "Hispanic, black or white or Asian." "Black" was closest to the driver's skin pigmentation. Marquez's broadcast did not mention the ponytail.

Marquez searched the Honda and found a methamphetamine pipe on the front passenger floorboard. Between the center console and the front passenger seat, Marquez discovered a black pouch in which there were four baggies containing methamphetamine residue. The passenger appeared to be under the influence of a controlled substance.

San Jose Police Officer Bryan Washington was asked to assist in the search for the driver. After he and five other officers searched "yard to yard" in a residential area for about 30 minutes, Washington found a man lying facedown under an RV that was parked in a residential driveway. This driveway was about half a mile from the spot where the Honda had stopped. Washington had encountered no other civilians walking or running in the area. Washington told the man to come out from under the RV, and the man did so. The man was defendant. Defendant was wearing a black jacket and dark pants, and he matched the description Washington had been given.

Marquez came to Washington's location and identified defendant as the driver of the Honda. Defendant is actually about five feet 10 inches tall. While defendant's skin appears to be "black," he is probably not "African-American" but Middle Eastern or Indian.[2] Marquez arrested defendant. He subsequently observed that defendant appeared to be under the influence of a controlled substance. Defendant told Marquez: "I'm fucked up on methamphetamine." Defendant identified himself to Marquez as "Rajeshwar M. Dutt"

---

[2] The trial court stated on the record at the hearing on defendant's new trial motion: "I don't know how to describe Mr. Datt for the record and help those folks in reviewing this issue other than to say that he has a dark complexion, has very black hair."

and provided a birth date of September 19, 1973. Both the name and the birth date were false. Defendant's driver's license had been suspended.

The Honda was not registered to defendant or the passenger. Marquez's attempts to contact the registered owner of the Honda were unsuccessful. He concluded that the registered name was "fraudulent" and that such a person did not exist. The Honda's ignition "had been tampered with" so that "any other flat object" could be used instead of a key.

## II. Procedural Background

Marquez testified at trial and identified defendant as the driver he had seen flee from the Honda. A DVD of Marquez's pursuit of the Honda, which had been recorded by a camera inside Marquez's patrol car, was played for the jury. The prosecution presented its case in a single day, and the defense rested without presenting any evidence.

At the instruction conference, defendant's trial counsel objected to the trial court's modification of CALJIC No. 12.85 to instruct the jury that it did not have to unanimously agree on any three particular Vehicle Code violations in support of the "willful or wanton" element of the evading count. She asserted that jury unanimity was required. "I believe that they need to agree unanimously on which three acts that they find were in violation of the Vehicle Code." The court overruled the objection.

Defendant's trial counsel argued to the jury that Marquez "conducted a shoddy investigation, and he came to a dubious, untrustworthy, unreliable identification of [defendant] as the driver of that vehicle." "Deputy Marquez needed to arrest somebody, he needed to justify that pursuit in order to vindicate himself" for engaging "in a high speed dangerous pursuit over what started out as a registration violation." "When you're forming an opinion as to the reliability of Deputy Marquez's testimony and his identification of Mr. Datt, you need to consider his opportunity to view the driver, and I think, it's pretty much conceded that during the case he really didn't get a good view of the driver. [¶] The best time that he had to look 3.5 seconds that he saw the driver exit the vehicle and running away, during the time he was looking at the man's clothing. [¶] He was looking at the man's hands; the man was driving away. [¶] It was dark; it was night. [¶] So, it is not a lot of opportunity to make a real clear, a real good, a real clear good look at the individual. [¶] And I think, one of the things that's really important is the fact that he came in here and said that he broadcast a description of the person having a ponytail, but he didn't make that broadcast at all. [¶] His broadcast was a black male adult, 6 foot to 6'3", wearing dark clothing, including a black jacket. [¶] That was his description. [¶] Mr. Datt is not a black man. [¶]

He is not 6 foot to 6'3", and we don't have any evidence other than the officer's testimony as to what he was wearing." "And yet, Deputy Marquez is asking you to rely on his three and a half seconds at night under the stress of just being involved in a pursuit in the dark to rely on his identification of Mr. Datt based on his observations for that short period of time. [¶] The bottom line is that this identification is not trustworthy."

The prosecutor countered this argument in his rebuttal argument. "You're going to have an instruction that we have not talked about yet, that's jury instruction 2.92. [¶] These are factors to consider in proving identity by eyewitness . . . ." The prosecutor proceeded to identify how these factors applied to the evidence.

The jury was instructed with CALJIC No. 2.92. "Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crimes charged. [¶] In determining the weight to be given eyewitness identification testimony, you should consider the believability of the eyewitness as well as other factors which bear upon the accuracy of the witness's identification of the defendant, including but not limited to any of the following: [¶] The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act; [¶] The stress, if any, to which the witness was subjected at the time of the observation; [¶] The witness's ability following the observation to provide a description of the perpetrator of the act; [¶] The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness; [¶] The cross-racial or ethnic nature of the identification; [¶] The witness's capacity to make an identification; [¶] Whether the witness was able to identify the alleged perpetrator in a physical lineup; [¶] The period of time between the alleged criminal act and the witness's identification; [¶] Whether the witness had prior contacts with the alleged perpetrator; [¶] The extent to which the witness is either certain or uncertain of the identification; [¶] Whether the witness's identification is, in fact, the product of his own recollection; and; [¶] Any other evidence relating to the witness's ability to make an identification."

The trial court instructed the jury with the court's modified version of CALJIC No. 12.85 regarding the reckless evading count. This instruction told the jury that one of the elements of this offense is that "[t]he driver of the pursued vehicle drove the vehicle in a willful or wanton disregard for the safety of persons or property." The jury was instructed: "A willful or wanton disregard for the safety of persons or property also includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time the person driving commits three or more Vehicle Code violations, described elsewhere in these instructions. [¶] Willful or wanton

means an act or acts intentionally performed with a conscious disregard for the safety of persons or property." The jury was also instructed: "Evidence has been introduced for the purpose of showing that there are three or more Vehicle Code violations upon which a conviction in Count 1 may be based. [¶] The defendant may be found guilty if the proof shows beyond a reasonable doubt and you unanimously agree that the defendant committed three of these acts. [¶] It is not necessary that you unanimously agree on which acts constitute the required number." The jury was instructed on four different types of Vehicle Code violations: failing to stop at a red light; failing to stop at a stop sign; passing on the shoulder; and speeding.

The jury returned guilty verdicts on all counts. The court found four prison prior allegations to be true.

After obtaining new counsel (his current appellate counsel), defendant moved for a new trial on precisely the same grounds he raises on appeal. At the hearing on the motion, defendant's new counsel called his law partner to testify that a reasonably competent attorney would have *consulted with* an expert on eyewitness identifications. She also testified that she "would have wanted to have an expert to explain to the jury the real problems" regarding eyewitness identifications. When she was asked whether she could "think of any tactical reason that you wouldn't call an ID expert in this case," she responded: "I honestly—[¶] I would have definitely had an expert review the case, and then if they said they could help me, then I would have called one, but I definitely would have had a review done." She did not know whether defendant's trial counsel had consulted an expert.

The trial court concluded that the instruction was not erroneous and that it was a tactical issue whether to call an eyewitness identification expert in this case. The court denied the new trial motion. Defendant was committed to state prison for a seven-year term. He timely filed a notice of appeal.

## III. Discussion

### A. Unanimity Instruction

Defendant claims that the trial court erred in instructing the jury that there was no need for the jury to be unanimous regarding the basis for its finding that defendant's driving of the Honda while eluding Marquez was done in "willful or wanton disregard for the safety of persons or property." He claims that the trial court was obligated to instruct the jury that it was required to be unanimous on the factual basis for this finding.

"The key to deciding whether to give the unanimity instruction lies in considering its purpose. The jury must agree on a 'particular crime' [citation];

it would be unacceptable if some jurors believed the defendant guilty of one crime and other jurors believed [him] guilty of another. But unanimity as to exactly how the crime was committed is not required. Thus, the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*People v. Russo* (2001) 25 Cal.4th 1124, 1134–1135 [108 Cal.Rptr.2d 436, 25 P.3d 641].)

Here, the "discrete criminal event" was defendant's flight in the Honda from Marquez's pursuit. There was but one flight from pursuit, which was continuous and was not divided into discrete criminal events. While there was evidence of various factual bases for a jury finding that defendant's flight from pursuit was done in "willful or wanton disregard for the safety of persons or property," jury unanimity is not required "as to the exact way the defendant is guilty of a single discrete crime." The trial court's instructions to the jury properly required the jurors to unanimously agree that defendant's flight from pursuit was in willful or wanton disregard for the safety of persons or property, and these instructions correctly told the jurors that they were not required to agree on the "exact way" in which defendant's flight from pursuit was in willful or wanton disregard for the safety of persons or property.

*People v. Mitchell* (1986) 188 Cal.App.3d 216 [232 Cal.Rptr. 438] (*Mitchell*) addressed an analogous issue. Mitchell was charged with violating Vehicle Code section 23153, subdivision (a), which makes it unlawful for a person to drive under the influence "and concurrently do any act forbidden by law." (Veh. Code, § 23153, subd. (a).) He claimed that the trial court was required to instruct the jury that it had to unanimously agree on the specific " 'act forbidden by law' " that had accompanied his driving under the influence. (*Mitchell*, at p. 220.) The court rejected this contention on the ground that the two possible legal violations on which this element could be premised were just "alternate ways of proving" this element, rather than "separate chargeable offenses." (*Mitchell*, at p. 222.) The same is true here. The different Vehicle Code violations upon which the "willful or wanton" element could have been premised were simply "alternate ways of proving" that element, not separate chargeable offenses of reckless evading.

Defendant claims that *Mitchell* is distinguishable because the contention in *Mitchell* was that the court should have given a unanimity instruction

sua sponte, while here a unanimity instruction was requested. This is a distinction without a difference. "The duty to instruct on unanimity when no election has been made rests upon the court sua sponte." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534 [70 Cal.Rptr.2d 878].) Because this is a sua sponte duty, the presence or absence of a request is irrelevant. Defendant also claims that the " 'act forbidden by law' " element in *Mitchell* is not analogous to the Vehicle Code "point" violations upon which the "willful or wanton" element was based here. While the two are certainly different, he does not explain why that distinction suggests that a unanimity instruction was not required in *Mitchell* but should be required here. If anything, the broad scope of the " 'act forbidden by law' " element at issue in *Mitchell* left open far more room for jury disagreement than the more narrow scope of the "willful or wanton" element here, which was limited to Vehicle Code "point" violations. (Veh. Code, § 2800.2, subd. (b).) Finally, he suggests that *Mitchell* is no longer " 'good law' " because the Bench Notes to CALCRIM No. 3500 state that a unanimity instruction is required sua sponte. This contention lacks merit. CALCRIM No. 3500 is the general unanimity instruction, which is, of course, a sua sponte instruction. However, the fact that a unanimity instruction must be given sua sponte *in situations where it applies* does not tell us if *this* is a situation where it applies. Neither CALCRIM No. 2181, the instruction on reckless evading, nor the bench notes accompanying it, say anything about the need for a unanimity instruction.

Furthermore, a unanimity instruction would not have been required in this case in any event. "The unanimity instruction is not required when the acts are so closely connected in time as to form part of one transaction. . . . This branch of the 'continuous conduct' exception . . . applies if the defendant tenders the same defense or defenses to each act and if there is no reasonable basis for the jury to distinguish between them." (*People v. Crandell* (1988) 46 Cal.3d 833, 875 [251 Cal.Rptr. 227, 760 P.2d 423], citations omitted.) All of the Vehicle Code violations were closely connected in time (during the 18-minute pursuit) so they were part of a single transaction. There was no reasonable basis for the jury to distinguish between the various violations, and defendant's identity defense obviously was the same as to all of the different Vehicle Code violations upon which the "willful or wanton" element could have been based. The trial court's instruction regarding the lack of need for unanimity was not erroneous.

### B. Ineffective Assistance of Counsel

Defendant contends that his trial counsel was prejudicially deficient because she did not present expert testimony on eyewitness identification at trial. Defendant relies heavily on *People v. McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709] (*McDonald*), overruled on another point in

*People v. Mendoza* (2000) 23 Cal.4th 896, 914 [98 Cal.Rptr.2d 431, 4 P.3d 265]. The issue in *McDonald* was whether a trial court had abused its discretion in precluding the defense from introducing expert testimony on the reliability of eyewitness identifications. (*McDonald*, at p. 361.) The California Supreme Court held that the trial court had abused its discretion. "When an eyewitness identification of the defendant is a key element of the prosecution's case but is not substantially corroborated by evidence giving it independent reliability, and the defendant offers qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury, it will ordinarily be error to exclude that testimony." (*McDonald*, at p. 377.)

*McDonald* provides no support for the claim that expert testimony must be presented by a defense attorney in *every case* where an eyewitness identification is uncorroborated. Yet defendant argues that "[t]he *only way* for the jury to determine whether Deputy Marquez was 'accurate' [within the meaning of the instruction the jury was given on eyewitness identification testimony] would have been to have heard from an expert regarding the pitfalls and defects of uncorroborated eyewitness testimony." (Italics added.) Defendant ignores the substance of the very detailed instruction that the jury was given to guide its evaluation of eyewitness identification testimony. The instruction identified a host of relevant factors, and defendant's trial counsel utilized many of these factors in support of her argument to the jury that Marquez's identification of defendant was suspect.

█ When a defendant challenges his conviction based on a claim of ineffective assistance of counsel, he must establish that counsel's performance was deficient and that his defense was prejudiced by those deficiencies. (*People v. Ledesma* (1987) 43 Cal.3d 171, 218 [233 Cal.Rptr. 404, 729 P.2d 839]; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 104 S.Ct. 2052].) "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (*Strickland v. Washington, supra*, 466 U.S. at p. 687.)

Defendant's appellate contention fails at its origin. He has not shown that his trial counsel *could have* presented any *favorable* expert testimony. Defendant's attempt to fill this gap at the hearing on his new trial motion fell short. Defendant produced testimony that a reasonably competent attorney

would have *consulted* an expert on eyewitness identification, but his witness conceded that she did not know whether defendant's trial counsel had consulted such an expert. And she admitted that the decision as to whether to call such an expert to testify at trial would have depended on whether the expert "said they could help me." Since defendant has failed to establish that his trial counsel failed to consult an expert or that such an expert would have been able to provide favorable testimony, he has not shown that his trial counsel was deficient in failing to present expert eyewitness identification testimony.

## IV. Disposition

The judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and McAdams, J., concurred.