Filed 11/7/14  P. v. Gallardo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGEL GALLARDO,<br><br>    Defendant and Appellant. | D064486<br><br><br>(Super. Ct. No. SCD246000) |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.

Alissa Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Angel Gallardo of felony robbery (Pen. Code, § 211), felony resisting an executive officer (Pen. Code, § 69), and felony

disturbing the peace (Pen. Code, § 415, subd. (1)) but acquitted him of possession of a deadly weapon in a penal institution (Pen. Code, § 4502, subd. (a)).

On appeal, Gallardo challenges his robbery conviction on multiple grounds. He contends the trial court violated his right to due process by admitting identification evidence resulting from unduly suggestive pretrial identification procedures. Gallardo also claims his defense counsel was ineffective in failing to object to admission of the identification evidence and in failing to call an eyewitness identification expert at trial. Finally, he argues the prosecutor committed error during closing argument by improperly shifting the burden of proof to the defense. We reject Gallardo's contentions and affirm the judgment.

FACTS

*The Robbery*

Around 5:25 p.m. on January 31, 2013, Michael Verdin rode his bicycle to a City of San Diego recreation center and joined a group of 10 to 20 people.[1] About an hour later, Gallardo, a member of the East San Diego (ESD) criminal street gang, and a younger man walked towards Verdin's bicycle. The younger man got onto Verdin's bicycle. Verdin confronted the younger man and said, "Hey, get off my bike." The younger man responded, "I'm going to drop your ass" and "You're going to have to fight me for it." Verdin told the younger man, "I don't want any problems." The younger man said, "Fuck you. You will have to fight me for it." Verdin grabbed the handlebar, at

---

1      On appeal, we set forth the facts in the manner most favorable to the judgment. (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1173.) Because Gallardo appeals only his robbery conviction, we limit our discussion of the facts to the robbery and subsequent identifications.

2

which point the younger man moved his hand as if he were going to strike Verdin.

Brian Gonzalez, a security guard standing about 15 to 20 feet away from the incident, approached and told the younger man, "Give him back his bike or I'm going to call the cops." Gallardo replied, "You don't know what's going on. I'm going to handle this." Gonzalez turned, walked 15 feet towards his security guard partner Oscar Pulido, and called the police.

When Gonzalez turned away, Gallardo punched Verdin in the mouth, knocking him to the ground. Verdin did not lose consciousness but stayed on the ground to avoid being hit again. When Verdin finally stood up, Gallardo and the younger man left with the bicycle.

### The Identification of Gallardo

Verdin described the person who punched him as a 30- to 40-year-old balding Hispanic male of skinny build, between five feet eight inches and six feet tall, with a moustache, tattoos on his neck and by his eye, and wearing a gray T-shirt.[2] Verdin had seen the older man once or twice before.

Pulido described the older individual as a six-foot Hispanic male with a shaved head, around 230 pounds with lots of tattoos, including an "SD" tattoo on his neck, wearing shorts and a white tank top.

Gonzalez described the older male as a Hispanic male in his mid-30's, between 5 feet 8 or 10 inches tall, with a moustache and large "ESD" tattoo on his neck. About an hour after Gonzalez called the police, he also wrote in his security report that the older

---

[2]    Verdin and Gonzalez also provided descriptions of the younger man.

3

man was wearing a gray shirt, dark jeans, dark beanie, white and black gloves, and had an "ESD" tattoo on his neck. Gonzalez had seen the older man two or three times before the robbery.

*The Field Showup*

After the police broadcast a description of both suspects, San Diego Police Officers Bruce Porterfield and Brian McGilvray searched the area for the two men. Officer McGilvray also reviewed descriptions of ESD members and determined Gallardo matched the description of the older suspect. The officers went to Gallardo's house, but he was not there.

The officers then located two different men in two separate locations who resembled the younger suspect. Officer Christopher Flood drove Verdin to separate single person field showups to view the two men. Officer Flood admonished Verdin prior to each showup. Verdin did not identify either man as a suspect.

About six hours after the robbery, around 12:30 a.m., Officers Porterfield and McGilvray spotted Gallardo in an alley near where the robbery occurred. Gallardo was wearing a dark hooded sweatshirt, dark pants, and gloves. Gallardo had a tattoo on his forehead that said "Fuck Jollys," a tattoo under his eye that said "ES," and a tattoo on his neck that said "ESD."

San Diego Police Officer Oscar Amado drove Verdin to a field showup to view Gallardo. As Officer Flood had done earlier, Officer Amado admonished Verdin before the viewing. The officers illuminated Gallardo with spotlights from their police cars. When police removed Gallardo from the patrol car, Verdin identified him as the older man who robbed and punched him. Verdin was in the back of the patrol car, about 30

4

feet from Gallardo.  The police arrested Gallardo.

*The "Six-Pack" Lineup*

Detective John Reif assembled a "six-pack" photo lineup after Gallardo's arrest. In doing so, Detective Reif contacted Detective Timothy Smith for a list of people with tattoos similar to Gallardo's neck tattoo.  All six men depicted in the lineup were ESD members around Gallardo's age.  According to Detective Smith, four men, including Gallardo, had "ESD" neck tattoos.  Two men, including Gallardo, had a tattoo near their left eye.

Detective Reif showed the lineup to Pulido and Gonzalez the day after the robbery.  He read admonitions to both men.  Pulido did not identify anyone in the lineup but pointed to Gallardo's photo and said, "that looks like the tattoo."  Gonzalez identified Gallardo as the man who punched Verdin.  Gonzalez said he was able to eliminate four of the men who did not have "ESD" neck tattoos.[3]  Gonzalez also identified Gallardo at trial.

*The Defense Version*

Gallardo testified on his own behalf and claimed he was at his brother's house the day of the robbery from 5:45 p.m. until about 8:00 p.m., when he and a friend went to get something to eat.  Gallardo testified they then went to his cousin's home and stayed until about midnight.  Gallardo testified he then walked his friend home and was heading

---

[3]     We note Gonzalez's testimony conflicts with Detective Smith's recollection; Detective Smith testified that four men in the lineup had "ESD" neck tattoos.  As we explain more fully below, this discrepancy is not material in light of the fact the photo lineup was part of the record and shows that in fact four of the men in the lineup had "ESD" or "ES" neck tattoos.

home himself when the police stopped him in the alley.

DISCUSSION

I.  Admission of the Identification Evidence

Gallardo first claims the trial court erred in admitting the identification evidence. He argues that the pretrial field showup and six-pack lineup were unduly suggestive in violation of his right to due process and that Verdin's and Gonzalez's identifications were unreliable under the totality of the circumstances.  We find no error.

A defendant who fails to make a timely objection or motion to exclude questionable pretrial identification procedures in the trial court forfeits the issue on appeal.  (*People v. Elliott* (2012) 53 Cal.4th 535, 585-586; Evid. Code, § 353.)  Because Gallardo did not object to admission of the identification evidence at trial, he forfeited the issue.  Still, Gallardo argues this court has discretion to consider the issue under *People v. Williams* (1998) 17 Cal.4th 148.  However, although *Williams* provides in a footnote that "[a]n appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party," the court states in the same footnote that an appellate court "is in fact barred when the issue involves the admission . . . or exclusion . . . of evidence."  (*Id.* at p. 161, fn. 6.)

As we explain, we nonetheless reach the merits of Gallardo's due process claim in our disposition of his closely related contention that his counsel was ineffective in responding to introduction of the identification evidence.

II.  Gallardo Was Adequately Represented With Respect to the Identification Evidence

Gallardo argues his attorney's failure to object to the identification evidence and

6

his failure to call an identification expert constituted ineffective assistance of counsel. Preliminarily we note Gallardo's attorney cross-examined Gonzalez, Pulido and Verdin about their observations and descriptions of the suspects. He questioned the officers about the suspect descriptions they received, the composition of the six-pack lineup, and the field showup. Gallardo's attorney also highlighted weaknesses in the witnesses' stories during closing argument. In addition, the court read jury instruction CALCRIM No. 315, which gave the jury factors to consider in evaluating eyewitness identification testimony.

To establish his defense counsel was ineffective, notwithstanding the measures counsel took in attacking the identifications, Gallardo must show: "'(1) that counsel's representation fell below an objective standard of reasonableness; *and* (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to [Gallardo] would have resulted. [Citations.]'" (*People v. Holt* (1997) 15 Cal.4th 619, 703.) "Judicial scrutiny of counsel's performance must be highly deferential." (*Strickland v. Washington* (1984) 466 U.S. 668, 689.) "[A] mere failure to object to evidence or argument seldom establishes counsel's incompetence." (*People v. Ghent* (1987) 43 Cal.3d 739, 772.) Moreover, counsel's failure to call an expert will not support a claim of ineffective assistance of counsel where either there were tactical reasons for doing so or there is no showing that an expert would have provided favorable testimony. (See *People v. Datt* (2010) 185 Cal.App.4th 942, 953 (*Datt*).)

As we explain below, the pretrial identification procedures were not unduly suggestive. Thus, counsel's failure to object to the identification evidence will not support relief from the judgment because any objection would have been meritless. The

7

record also discloses tactical reasons counsel may not have called an identification expert and no showing as to the testimony an expert would have provided; thus, on this record, the failure to call an expert will not establish a claim of ineffective assistance of counsel.

A. *The Identification Evidence Was Properly Admitted*

Even if Gallardo's counsel had timely objected, the court properly admitted the identification evidence. "In order to determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (*People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*).) "'Only if the challenged identification procedure is unnecessarily suggestive is it necessary to determine the reliability of the resulting identification.'" (*People v. Alexander* (2010) 49 Cal.4th 846, 902.) "The defendant bears the burden of demonstrating the existence of an unreliable identification procedure." (*Cunningham*, at p. 989.)

1. *The Field Showup*

Gallardo argues the field showup was unduly suggestive because he was detained after midnight, was pulled out of the patrol car in the presence of two police officers, and resembled the suspect, making it almost certain Verdin would identify him.

"[A]lthough a one-person showup may pose a danger of suggestiveness, such showups 'are not necessarily or inherently unfair. [Citations.] Rather, all the circumstances must be considered.'" (*People v. Medina* (1995) 11 Cal.4th 694, 753.) For an identification procedure to violate a defendant's due process rights, "the state must, at the threshold, improperly suggest something to the witness--i.e., it must, wittingly or unwittingly, initiate an unduly suggestive procedure." (*People v. Ochoa* (1998) 19 Cal.4th 353, 413.)

Here, the field showup was not unduly suggestive. That the showup occurred after midnight is not by itself suggestive. Under the circumstances of this case, it was the most logical time to conduct the showup because Officers Porterfield and McGilvray did not locate Gallardo until around 12:30 a.m. Indeed, conducting the showup at that time also increased the chances for a reliable identification of a possible suspect. (See *In re Carlos M.* (1990) 220 Cal.App.3d 372, 387 ["single-person show-ups *for purposes of in-field identifications* are encouraged, because the element of suggestiveness inherent in the procedure is offset by the reliability of an identification made while the events are fresh in the witness's mind, and because the interests of both the accused and law enforcement are best served by an immediate determination as to whether the correct person has been apprehended"].) Had the officers waited until the next day to conduct the showup, any identification would have been less reliable.

9

The presence of two police officers when Gallardo was removed from the patrol car was not unduly suggestive. It is not unusual for police officers to be present for infield showups once they apprehend a potential suspect. Their presence alone does not improperly suggest something to the witness. Gallardo's claim that Verdin was certain to identify him because he resembled the perpetrator also fails. Infield showups are usually held because police find someone that resembles the suspect. Earlier in the evening, police took Verdin to two single person showups to view individuals who fit the description of the younger man. Verdin did not identify either individual as the young man who robbed him. This fact weighs against Gallardo's claim that because he resembled the older suspect, Verdin was certain to identify him. Moreover, as in the two earlier showups, Officer Amado admonished Verdin prior to his infield identification of Gallardo. Even when viewed together, the circumstances of the field showup were not unduly suggestive.

Because we find the infield showup was not unduly suggestive, we need not address whether Verdin's identification was reliable under the totality of the circumstances.

2. *The "Six-Pack" Lineup*

Gallardo also argues the six-pack lineup shown to Gonzalez was unduly suggestive because "only one filler had an ESD tattoo on his neck."

To determine if a photo lineup is unduly suggestive, the key inquiry is "'whether anything caused [the] defendant to "stand out" from the others in a way that would suggest the witness should select him.' [Citations.]" (*People v. Yeoman* (2003) 31 Cal.4th 93, 124.) "[T]here is no requirement that a defendant in a lineup, either in person

10

or by photo, be surrounded by others nearly identical in appearance." (*People v. Brandon* (1995) 32 Cal.App.4th 1033, 1052.) "Nor is the validity of a photographic lineup considered unconstitutional simply where one suspect's photograph is much more distinguishable from the others in the lineup." (*Ibid.*) Generally, "a pretrial procedure will only be deemed unfair if it suggests in advance of a witness's identification the identity of the person suspected by the police." (*Ibid.*)

After an independent review of the record and People's exhibit No. 5 (the photo lineup), we conclude the photo lineup was not unduly suggestive. All six individuals depicted are Hispanic males who are similar in appearance. They have shaved heads, some facial hair, neck tattoos, are roughly the same build, and look similar in age. Gallardo's claim that only one other person with an "ESD" neck tattoo was included in the lineup is inaccurate. Rather, the men in positions three (Gallardo), five, and six have "ESD" tattoos on the front of their necks, visible in whole or in part. Detective Smith also testified he was told by his colleague that "ESD" was part of the individual's neck tattoo in position two. While Gallardo is the only person with a "Fuck Jollys" tattoo on his forehead, none of the witnesses mentioned this tattoo prior to viewing the lineup. Thus, the tattoo could not have improperly suggested Gallardo's identification to the witnesses. (See *People v. Gonzalez* (2006) 38 Cal.4th 932, 943-944 [reasoning that although defendant was the only one with a droopy eye and tattoo on the back of his head, none of the witnesses described either characteristic prior to or when viewing the photo lineup, and thus neither feature suggested the witness should select the defendant].)

We also note the detectives took adequate measures to ensure the lineup was reasonable. Detective Reif asked Detective Smith for a list of individuals with neck and

11

eye tattoos similar to Gallardo's. Detective Smith reviewed 10 to 15 files looking for men similar in age and appearance to Gallardo. He then gave Detective Reif a list of five to seven individuals with similar neck tattoos. The detectives included an individual in position six who had both an "ESD" neck tattoo and an eye tattoo, like Gallardo. The detectives' conscious effort to include individuals similar in appearance to Gallardo is reflected in the photo lineup.

Gallardo's reliance on *People v. Carlos* (2006) 138 Cal.App.4th 907 is misplaced. In *Carlos*, a sheriff compiled a six-pack photo lineup that included a man suspected of robbing a donut shop. (*Id.* at p. 909.) The photo lineup listed the suspect's name and identification number on the front of the form, directly below his picture. (*Id.* at p. 912.) The sheriff separately showed the lineup to the three victims; only one positively identified the suspect. (*Id.* at p. 909.) No victim identified the suspect at trial. (*Ibid.*) The court held the trial court erred in admitting the photo lineup because it was unduly suggestive. (*Id.* at p. 912.) The court reasoned the "photo array was impermissibly suggestive and prejudicial because the labeling and positioning of [the defendant's] picture plainly made his photograph 'stand out' from the others." (*Ibid.*) By contrast, the photo lineup here does not contain any identifying information under Gallardo's photo that would have suggested a witness should pick him. As noted above, that Gallardo was the only one with a "Fuck Jollys" tattoo on his forehead is not dispositive because no witness identified that tattoo prior to or when viewing the photo lineup. *People v. Carlos* is therefore inapplicable here.

Because the six-pack lineup was not unduly suggestive, we again do not reach the question whether Gonzalez's identification was reliable under the totality of the

12

circumstances.

In sum, the procedures employed in the lineups were appropriate and would have made any objection meritless. Hence, counsel did not err in electing, instead, to attack the reliability of the identification by way of cross-examination of the witnesses, argument, and instructions.

B. *Eyewitness Identification Expert*

Gallardo next contends his defense counsel was ineffective for failing to call an eyewitness identification expert in a "purely eyewitness identification case." As we have noted, to establish ineffective assistance of counsel, a defendant must show "counsel's performance was deficient" and "the deficient performance prejudiced the defense." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 687.) The latter "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (*Ibid.*) "When a defendant on appeal makes a claim that his counsel was ineffective, the appellate court must consider whether the record contains any explanation for the challenged aspects of the representation provided by counsel." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1058.)

"The decision[] . . . whether to put on witnesses [is a] matter[] of trial tactics and strategy which a reviewing court generally may not second-guess." (*People v. Mitcham*, *supra*, 1 Cal.4th at p. 1059.) As respondent points out, Gallardo's counsel may have had any one of a number of reasons not to call an eyewitness identification expert. Counsel may have believed discrepancies in the testimony given by prosecution witnesses could be more effectively exploited through cross-examination, closing argument, and the jury instructions provided by the trial court. In this regard, counsel may have been concerned

13

that introduction of a defense expert would permit the prosecution to introduce its own expert on the issue and that in a conflict with the experts, there was little, if any, advantage for Gallardo. Thus, any number of tactical reasons support the defense attorney's decision not to call an expert.

Moreover, "[o]n direct appeal, a claim of ineffective counsel cannot be established by mere speculation regarding the 'likely' testimony of potentially available witnesses." (*People v. Medina* (1995) 11 Cal.4th 694, 773.) On the record before us, there is no evidence to indicate how an eyewitness expert for Gallardo would have testified. (See *Datt*, *supra*, 185 Cal.App.4th at p. 953 [rejecting an ineffective counsel claim where defendant failed to show counsel did not consult an expert or that such an expert would have provided favorable testimony].) Thus, there is no basis upon which to find that an expert would have provided testimony favorable to Gallardo.

Finally, Gallardo's emphasis on *People v. McDonald* (1984) 37 Cal.3d 351 is misplaced. In *McDonald*, the court held the trial court abused its discretion by precluding eyewitness expert testimony offered by the defense. Here, the defense counsel did not offer expert testimony. This decision could have been for any number of the reasons described above. Nothing in *McDonald* supports "the claim that expert testimony must be presented by a defense attorney in *every case* where an eyewitness identification is uncorroborated." (*Datt*, *supra*, 185 Cal.App.4th at p. 952.)

In sum, on this record, Gallardo's defense attorney cannot be said to have acted unreasonably in not calling an eyewitness identification expert.

III. Prosecutorial Misconduct

Finally, we consider Gallardo's contention that the prosecutor committed

14

misconduct during closing argument by improperly shifting the burden of proof to the defense.[4]  We find no prejudicial misconduct.

"'In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review.'"  (*People v. Friend* (2009) 47 Cal.4th 1, 29 (*Friend*).)  Here, Gallardo failed to object to the prosecutor's remarks and thus waived the issue on appeal.  (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1125 [refusing to address a claim of prosecutorial misconduct where the defendant failed to object at trial].)  Gallardo claims, however, that his counsel's failure to object to the prosecutor's remarks constituted ineffective assistance of counsel.  Once again, we disagree.

As we have discussed, to show ineffective assistance of counsel, a defendant must demonstrate deficient performance and prejudice.  (*Strickland v. Washington*, *supra*, 466

---

[4]    Gallardo argues the following five statements made by the prosecutor in closing argument and on rebuttal were improper:
(1)  "You would have to believe he's innocent.  If we have not proven beyond a reasonable doubt that Mr. Gallardo is guilty you would have to believe that he's the unluckiest man alive, that the witnesses who all don't know each other all conspired against him, or that he's just a victim of coincidences."
(2)  "It's unreasonable to believe that there is some grand conspiracy against Mr. Gallardo that has taken place over the span of weeks all because for whatever reason they don't like Mr. Gallardo and want to dirty him up.  That doesn't make sense.  That's unreasonable.  And the law requires that you reject the unreasonable conclusions."
(3)  "The defense is asking you to reject such a reasonable interpretation and to buy off on the unreasonable, this conspiracy theory that must exist."
(4)  "There's no conspiracy going on.  There's no cover up between officers."
(5)  "So think about all the conspiracy and all of the collusion that would need to take place between all of the witnesses in this case.  It's asking you to make these unreasonable conclusions.  Because think about it, if they were going to conspire do you think they would have done a better job?"

15

U.S. at p. 687.)  "[A] mere failure to object to evidence or argument seldom establishes counsel's incompetence."  (*People v. Ghent*, *supra*, 43 Cal.3d at p. 772.)

We of course agree a prosecutor cannot suggest "a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence."  (*People v. Bradford* (1997) 15 Cal.4th 1229, 1340.)  However, "[w]hen a claim of misconduct is based on the prosecutor's comments before the jury, '"the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion."'"  (*Friend*, *supra*, 47 Cal.4th at p. 29.)  An appellate court does not lightly infer "'that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'"  (*People v. Brown* (2003) 31 Cal.4th 518, 554.)  Importantly, the prosecution has "broad discretion to state its views regarding which reasonable inferences may or may not be drawn from the evidence."  (*Cunningham*, *supra*, 25 Cal.4th at p. 1026.)

Given the inferences we are required to draw and the breadth of the prosecution's discretion in argument, it is of some significance that prior to making the comments Gallardo now contests, the prosecutor made clear the state carried the burden of proof:  "The People have the burden of proof.  I have to prove this case to you beyond a reasonable doubt.  The defendant has absolutely no burden whatsoever."  In this context, there was no reasonable likelihood the jury could have "construed or applied any of the complained-of remarks" as shifting the burden of proof to the defense.  (See *Friend*, *supra*, 47 Cal.4th at p. 29.)  Thus, Gallardo's counsel was not ineffective in failing to object to the remarks, which, given their context, were in no sense objectionable.

Even if the prosecutor's statements were improper, Gallardo was not prejudiced.

16

To demonstrate prejudice, a defendant must show a "reasonable probability of a different outcome" had the objection been made. (*People v. Osband* (1996) 13 Cal.4th 622, 700.) The prosecutor told the jury the state had to prove its case beyond a reasonable doubt. The court also instructed the jury that the prosecution had to prove each charge beyond a reasonable doubt and that jurors were to follow the court's instructions should they conflict with comments made by the attorneys. The jury's not guilty verdict on count four suggests it understood the court's instructions and based its decision on the evidence. Thus, on this record, Gallardo cannot show that an objection would have lead to a more favorable outcome.

Finding nothing impermissible in the prosecutor's closing argument, and finding no prejudice, we conclude Gallardo's defense counsel was not ineffective in failing to object to the prosecutor's remarks.

DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

McINTYRE, J.

17