Filed 10/17/22  P. v. Trimble CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B314258 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA100864) |
| v. | |
| LARECE SHANNA TRIMBLE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Hector M. Guzman.  Affirmed.

G. Martin Velez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Larece Shanna Trimble appeals from her conviction of robbery for which she received probation. She contends the trial court abused its discretion in denying her request to continue the trial after the close of evidence, and that her privately retained counsel was ineffective for failing to present an expert on eyewitness identification.

We affirm.

## BACKGROUND

Defendant was charged by information with one count of robbery arising from an incident that occurred at a Target store in Redondo Beach on December 3, 2018. (Pen. Code, § 211.) At the arraignment, defendant pled not guilty and substituted privately retained counsel in place of her appointed counsel. Defendant thereafter waived her right to a jury trial.

In April 2021, the court granted defendant's motion to continue trial to June 2021.

At the June 8, 2021, bench trial, two Target employees, Christopher Romero and LaMeshia Williams, testified about the shoplifting incident they witnessed and both identified defendant in court as the woman who had committed the theft.

Both Mr. Romero and Ms. Williams worked security and loss prevention for the store. Mr. Romero testified he first noticed defendant while he was monitoring the security cameras. Defendant selected a large amount of different clothing items and then walked to an area of the store without security camera coverage. Mr. Romero told his coworker, Ms. Williams, to stay on the cameras so he could go out onto the floor. Mr. Romero saw defendant pull a bag from her purse, place the clothes in the bag and head toward the front of the store without stopping to pay.

2

When defendant walked out of the store with the merchandise, Mr. Romero followed her out and stopped her, identifying himself as security. Defendant swung the bag at Mr. Romero, hitting him in the head and/or face. Defendant then got into the front passenger seat of a car that appeared to be waiting for her and fled.

Ms. Williams corroborated Mr. Romero's testimony. Ms. Williams continued to monitor the security cameras while Mr. Romero went out onto the floor and then joined him outside the store to help him detain defendant.

In addition to identifying defendant in court as the person who committed the robbery, Mr. Romero and Ms. Williams also separately identified defendant at the police station about a week after the incident. They were separately shown six-pack photographic lineups and positively identified defendant as the shoplifter and confirmed those identifications in court.

Defendant testified in her own defense and denied ever being at the Redondo Beach Target store. She said there was no reason for her to go there since there was a Target about five minutes from her home. Defendant said the woman on the security video was not her and did not look like her. Defendant's brother also testified and said he did not believe the woman in the video was his sister, that he spoke with his sister by phone on the day of the alleged incident, and he believed her to be at home taking care of their father. Both defendant and her brother testified defendant had a visible tattoo on her chest and the woman on the video did not. They also said defendant was more heavy set and had a lighter complexion than the woman in the video.

The surveillance video of the incident and the six-pack photographic lineups were admitted into evidence. The court viewed the video footage twice.

The court found defendant guilty of robbery beyond a reasonable doubt. In explaining its decision, the court said, among other things, that the individual in the video "looks like the defendant in this case." The court also said it found the identifications by Mr. Romero and Ms. Williams to be highly credible. The court sentenced defendant to three years formal probation, plus 50 hours of community service.

This appeal followed.

## DISCUSSION

Defendant first contends the court abused its discretion in refusing to grant a continuance of the trial after the close of evidence. " 'The granting or denial of a motion for continuance in the midst of a trial traditionally rests within the sound discretion of the trial judge who must consider not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 972.) We find no abuse of discretion.

In April 2021, defendant was granted a continuance of almost two months. Then, on the eve of trial, defendant made an ex parte request for a trial continuance to obtain a "facial recognition expert." Defendant argued that while the security footage is "very clear video," defendant maintained the woman depicted was not her and "it would be helpful to her case to have

4

an outside person other than herself and her brother or even one of her friends testify that that's not her in the video."

The court denied the continuance request, explaining it was untimely and defendant had not justified why the proposed expert should be appointed and paid for by the court when defendant had privately retained counsel.

Just before closing arguments, defendant raised the issue again, arguing for a continuance to allow for the appointment of a facial recognition expert and presentation of additional testimony to the court. The court denied the request, reiterating the fact defendant had been granted a prior continuance, had been in possession of the video for awhile and had not justified the delay, and had not presented information demonstrating defendant's indigency in order to justify appointment of the expert.

On appeal, defendant argues the continuance should have been granted to allow for testimony by an expert in eyewitness reliability issues, not facial recognition, because the case hinged on the testimony of the two eyewitnesses. Regardless of the substance of the proposed expert testimony, defendant has not established an abuse of discretion by the trial court in denying the request.

This was a court trial before an experienced judge, knowledgeable about the issues related to eyewitness testimony. There was video footage of the incident which the court was able to review in addition to hearing the witness testimony.
The testimony of Mr. Romero and Ms. Williams established they were able to observe defendant as the incident unfolded and were not limited to a brief, stressful interaction with defendant as she suggests. The interaction with defendant outside the store may have been short, but that was only the very end of their

observations of defendant.  Both Mr. Romero and Ms. Williams attested to separately viewing the six-pack photographic lineups about a week after the incident and making a positive identification of defendant as the shoplifter.  There was no evidence presented the lineup procedures were flawed.  Moreover, defendant has not shown specifically what the expert would have attested to and offers only speculation and generalities.  We have no basis to conclude defendant was prejudiced by the denial of the belated request.

Defendant also contends her trial counsel was ineffective in failing to timely seek the appointment of an expert to testify at trial.  Again, we are not persuaded.

In order to prevail on a claim of ineffective assistance of counsel, defendant had to demonstrate "both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings."  (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–696.)

The decision about what witnesses should testify, including any experts, is an inherently tactical decision for a trial attorney.  (See, e.g., *People v. Mitcham* (1992) 1 Cal.4th 1027, 1059 [decisions about whether a particular witness should testify is a matter of trial strategy "which a reviewing court generally may not second-guess"].)  As our Supreme Court has explained, an appellate court "will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.  Defendant thus

6

bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.] If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Gamache* (2010) 48 Cal.4th 347, 391; see also *People v. Snow* (2003) 30 Cal.4th 43, 95 [where appellate record does not demonstrate whether counsel had a legitimate tactical reason for a litigation choice, ineffective assistance claim better resolved on a petition for habeas corpus].)

Here, given counsel's request for an appointment of the expert by the court, it appears the issue of consulting and hiring an expert may have come down to a question of expense. Even assuming, solely for the sake of argument, that competent counsel would have sought the appointment of an expert more expeditiously and with a proper showing of defendant's alleged indigency despite paying for private counsel, defendant has not shown she would have received a more favorable outcome had expert testimony been presented. As we already explained above, the court had the benefit of the surveillance video of the incident to view for itself, which it did more than once, in addition to the testimony of Mr. Romero and Ms. Williams and the photographic lineups with defendant's photo they identified as the shoplifter. Defendant has not shown what was the substance of the purportedly favorable expert testimony she could have presented. Rather she has only speculated that an expert may have bolstered her defense. (*People v. Datt* (2010) 185 Cal.App.4th 942, 952–953 [ineffective assistance based on failure to put on expert testimony not established where the defendant did not

show there was favorable expert testimony that could have been presented and assisted the defense theory].)

**DISPOSITION**

The judgment of conviction is affirmed.


GRIMES, Acting P. J.

WE CONCUR:


WILEY, J.


HARUTUNIAN, J.*

---

*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.