Filed 8/28/23  P. v. Sandwell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>RONALD EUGENE SANDWELL,<br><br>        Defendant and Appellant. | C096795<br><br>(Super. Ct. No. 62146616) |

A jury found defendant Ronald Eugene Sandwell guilty of felony evading a peace officer.  (Veh. Code, § 2800.2.)  (Statutory section citations that follow are found in the Vehicle Code unless otherwise stated.)  The trial court found true allegations that defendant had been convicted of multiple serious or violent felonies for purposes of the Three Strikes law, and it imposed an indeterminate sentence.

Defendant contends the trial court prejudicially erred by:  (1) admitting evidence of a similar evasion he committed after this offense; (2) not giving a unanimity instruction; (3) allowing the prosecution to amend the information's prior conviction allegations after the jury had been dismissed when the original information allegedly did not notify defendant of his exposure to an indeterminate sentence; and (4) denying his motion to strike the prior strike allegations.

1

We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

A.      Prosecution case

Roseville police officers stopped defendant near Atkinson Street late on the night of February 15, 2016.  He was driving a Chevy Impala with an expired registration.  Defendant turned the car off.  He told the officers the registration was expired because he had recently purchased the car.  He gave one of the officers the car's pink slip and other paperwork from the purchase.

During this exchange, the second officer saw what appeared to be a baseball-sized bag of methamphetamine under defendant's leg.  The officer told the first officer to pull defendant out of the car.  The first officer asked defendant to step outside the vehicle, but defendant started the car and sped away.  The Impala's tires screeched as defendant drove away westbound on Atkinson Street.  The officers stepped back to avoid being hit.

The officers sprinted back to their car and gave pursuit with the car's flashing lights and siren on.  Westbound Atkinson Street becomes PFE Road.  The speed limit on Atkinson Street/PFE Road is 45 miles per hour.  The officers were going 85 miles per hour, and defendant was going faster than that.  The second officer testified their vehicle reached 90 miles per hour.  He estimated defendant reached over 100 miles per hour immediately after he took off, and he maintained that speed throughout the pursuit.

Defendant ran three stop signs while being pursued.  He ran the stop signs at PFE Road's intersections with Antelope Road, Cook Riolo Road, and Pinehurst Drive.  After chasing defendant for nearly three miles, the officers ended the pursuit between PFE Road's intersections with Pinehurst Drive and Walerga Road, the next major intersection, because they had lost sight of the Impala's taillights.

Approximately eight months later, Sacramento police officers apprehended defendant after a high-speed chase.  On the evening of October 8, 2016, the officers saw

2

a silver Maserati driven by defendant that had no front license plate. They attempted to make a vehicle stop, but defendant speeded up. He drove recklessly. At one point, he drove into oncoming traffic. He drove into the bicycle lane to pass cars. The officers pursued defendant at 99 miles per hour, but defendant pulled away from them. One officer estimated defendant was traveling at well over 100 miles per hour. The officers ended the pursuit for safety reasons.

Later that evening, the officers received a dispatch that the Maserati had crashed. Defendant was eventually located and arrested. In an interview with Sacramento police officers, defendant stated, "I seen you turn and I knew you were gonna get on me [¶] . . . [¶] I got up to 145 on the freeway but uh I will try to drive fast. I figure at the next turn, imma lose you and I did."

B. Defense

Defendant testified on his own behalf. He admitted that for the Sacramento incident, he was convicted of felony evading and for being a felon in possession of a firearm and ammunition. (§ 2800.2; Pen. Code, §§ 20800, 30305.) At the time of the Sacramento incident, defendant knew there was a warrant out for his arrest for the Roseville incident. When the Sacramento officers began following him, he decided, " 'I'm going for it. I'm going to run.' " He passed two cars while driving in the bicycle lane. He denied driving in the opposite lane of traffic. He admitted driving at 100 miles per hour in a 45-miles-per-hour speed limit zone and that driving at that speed was reckless. He admitted crashing the Maserati. He admitted running from the police and being arrested after crashing the car.

Defendant testified that during his interview with Sacramento police, he told the officers he ran from them because there was a warrant out for his evading police in Placer County in his Impala. He also told the officers that in the Placer County chase, he spun out while trying to turn onto Walerga Road. Defendant asserted he made that statement

3

to the officers because his buddy had heard on a police scanner that the high-speed chase ended on Walerga Road.

Testifying about the Roseville incident, defendant stated that at the time of that chase, he was driving to his buddy's in Roseville to drop off a saw. He pulled over after seeing the police lights behind him. He turned off the car, and he handed the paperwork to the first officer. The second officer then said to pull defendant out of the car, and he yelled the command a second time. Defendant was shocked by the officer's tone of voice and did not know why he was yelling. He did not have anything under his leg. He started the car, put it in gear, and took off.

Defendant testified he did not drive to Walerga Road during the chase. He decided to turn onto a side street to lose the officers. He turned left onto March Road and stopped the car. When heading westbound on Atkinson Street/PFE Road, March Road intersects with PFE Road before the Antelope Road intersection. Officers testified the first stop sign defendant ran was at the Antelope Road intersection. After defendant saw the officers drive past March Road, he drove back onto Atkinson Street/PFE Road and headed east toward his buddy's house. Defendant admitted he had been speeding, but he denied committing any other Vehicle Code violations, including running the three stop signs.

C.    Rebuttal

One of the Roseville officers that pursued defendant testified on rebuttal that he never saw defendant's car brake or slow down during the pursuit. He never saw the Impala turn left onto March Road. He heard and saw the Impala continue on PFE Road past March Road and go through the three stop signs.

4

D.    Verdict and sentence

The jury found defendant guilty of felony evading a peace officer in willful disregard for safety.  (§ 2800.2.)  The trial court found true allegations that defendant had been convicted of eight serious or violent felonies for purposes of Three Strikes.

The trial court denied defendant's *Romero* motion to strike the serious priors.  (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.)  It sentenced defendant to a prison term of 25 years to life.

DISCUSSION

I

*Admission of Other Crimes Evidence*

The trial court admitted evidence of the Sacramento car chase and arrest under Evidence Code section 1101, subdivision (b) for establishing defendant's intent and a common design or plan in the Roseville incident.  The court found that the evidence was not unduly prejudicial under Evidence Code section 352.

Defendant contends the Sacramento incident did not demonstrate the existence of a common design or plan.  He provides no further argument on this point in his opening brief.  His lack of argument forfeits the issue on appeal.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

Defendant further contends the trial court committed prejudicial error by admitting the Sacramento incident evidence to establish intent.  He does not claim the evidence was too dissimilar to be admitted under Evidence Code section 1101, subdivision (b).  Rather, he claims his intent was not at issue and the evidence was cumulative.

Section 2800.2, the felony evading statute under which defendant was convicted, prohibits evading a pursuing peace officer with willful or wanton disregard for the safety of persons or property.  (§ 2800.2, subd. (a).)  Willful or wanton disregard for safety

5

includes, but is not limited to, committing three or more traffic violations while fleeing which are assigned a traffic violation point count. (§ 2800.2, subd. (b).)

Defendant argues that if the jury believed he fled from Roseville police as far as Walerga Road and ran three stop signs, his guilty intent was established under the terms of the statute. But if the jury believed defendant turned onto March Road, stopped his car, and then returned to Roseville, defendant asserts there was a reasonable argument he did not drive recklessly or commit a felony evading. He claims there was no middle ground from which the jury could conclude defendant committed felony evading without the requisite criminal intent. And he argues the issue was factual, and his presumed or inferred state of mind played no role in the jury's decision. Finally, he says evidence of the Sacramento incident was cumulative and thus irrelevant on the issue of intent.

Defendant relies on *People v. Balcom* (1994) 7 Cal.4th 414 (*Balcom*). In *Balcom*, the prosecution argued that evidence showing the defendant had committed rape in Michigan two months after committing the charged rape in California and had done so in a similar manner was admissible to establish intent for the charged rape. (*Id.* at p. 421.) The California Supreme Court disagreed. It found that the other-crime evidence had "limited probative value" on the issue of intent which was "outweighed by the substantial prejudicial effect of such evidence." (*Id.* at p. 423.)

The *Balcom* court acknowledged that the defendant's not guilty plea placed all elements of the charged crime at issue, including intent. (*Balcom, supra*, 7 Cal.4th. at pp. 422-423.) But given the facts presented—the victim testified defendant raped her after placing a gun to her head, while the defendant conceded the two had sex but claimed it was consensual and did not involve a gun or force—the "wholly divergent accounts create[d] no middle ground from which the jury could [have] conclude[d] that defendant committed the proscribed act of engaging in sexual intercourse with the victim against her will by holding a gun to her head, but lacked criminal intent because, for example, he honestly and reasonably, but mistakenly, believed she voluntarily had

6

consented." (*Id.* at p. 422.)  Because the victim's testimony of being raped at gunpoint, if believed, established the requisite intent, admitting evidence of the defendant's uncharged similar offenses would be cumulative on that issue.  (*Id*. at p. 423.)

The circumstances here are different than those in *Balcom*.  Unlike in *Balcom*, where the evidence left "no middle ground" for the jury between a finding of rape with the requisite intent and a finding of not guilty (*Balcom*, *supra*, 7 Cal.4th at p. 422), the evidence of defendant's intent was not so unambiguous that the trial court could conclude the prosecution, in essence, was relieved of proving the element of defendant's unlawful intent.

To establish defendant violated section 2800.2, the prosecution had to prove defendant (1) willfully fled a pursuing peace officer's vehicle with the intent to evade, and (2) drove his vehicle "in a willful or wanton disregard for the safety of persons or property."  (§ 2800.2, subd. (a); *People v. Taylor* (2018) 19 Cal.App.5th 1195, 1201.) Under the statute, the prosecution could establish defendant drove in willful or wanton disregard for the safety of persons or property by showing he either drove in a manner manifesting the mental state required to commit reckless driving in violation of section 23103 or, alternatively, he committed three or more traffic violations that are assigned traffic violation points.  (§ 2800.2, subd. (b); *Taylor*, at p. 1203.)

The prosecution argued to the jurors that some of them could agree defendant drove in willful or wanton disregard, and the others could agree defendant committed three or more traffic violations during the chase.  Unanimity was not required on either of these elements; each juror had to find at least one of them true.

Thus, if the jury agreed with defendant that he did not run the three stop signs and instead turned onto March Road, acquittal was not the jury's only choice.  Defendant's claim—if he did not run the stop signs, he did not commit felony evading—is incorrect. The jury could still convict defendant for felony evasion by his driving recklessly in violation of section 23103 from the moment he drove away from the vehicle stop.

7

There was substantial evidence that defendant harbored the intent to commit reckless driving. He took off fast. His tires screeched when the officers were mere inches from his car, causing the officers to jump back to avoid being hit. As the pursuit began, the officers were about a quarter mile behind him. The posted speed limit at that point was 45 miles per hour. As the officers reached the point where Atkinson Street turned into PFE Road, their car was going 85 or 90 miles per hour, and defendant was pulling away from them, as he had been the entire pursuit. The second officer estimated defendant was traveling at over 100 miles per hour and had reached that speed immediately after he took off.

Because reckless driving was an alternate set of facts to establish defendant's intent, his intent remained at issue even if he did not run the three stop signs. Hence, evidence of the Sacramento incident was relevant to establishing defendant's intent by showing defendant harbored the same intent in the Sacramento incident as he did in the Roseville incident. The evidence was not cumulative "because the balance of the evidence does not render [defendant's] intent and actions beyond dispute." (*People v. Foster* (2010) 50 Cal.4th 1301, 1331.)

Defendant nonetheless claims the trial court erred by determining evidence of the Sacramento incident was not unduly prejudicial under Evidence Code section 352. Defendant does not argue the point on its merits. Rather, he argues that despite the court's giving the jury a limiting instruction on how they could use the evidence, the jury likely used the evidence as propensity evidence in violation of Evidence Code section 1101, subdivision (a). Defendant cites no evidence in the record that would support this argument.

The court instructed the jurors that they could use the evidence only for the limited purpose of establishing intent or common scheme or plan. With no evidence to the contrary, we presume the jury followed the instruction. (*People v. Washington* (2017) 15 Cal.App.5th 19, 26.) The trial court did not abuse its discretion admitting evidence of

8

the Sacramento incident because the evidence demonstrated defendant's intent and the existence of a common design or plan, it was not cumulative on the issue of intent, and, without evidence to the contrary, the jury is deemed to have complied with the court's limiting instruction.

## II

### *Lack of Unanimity Instruction*

A criminal jury must unanimously agree the defendant is guilty of a specific crime. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Generally, if the prosecution introduces evidence of multiple discrete crimes to prove a single count, either the prosecution must elect among the crimes or the trial court must instruct the jury to agree on the same criminal act. (*Ibid*.)

Defendant contends the trial court erred by denying his request for a unanimity instruction. He argues a unanimity instruction was required because under section 2800.2, willful or wanton disregard for the safety of persons or property can be established by showing alternative crimes based on competing theories—reckless driving or three or more traffic violations. Although defendant asserts the jury would not have convicted him of felony evasion if they believed he did not run the three stop signs during the pursuit, a point we dispute, he claims jury unanimity was necessary because there were two competing factual scenarios supported by separate legal theories.

The trial court did not err in rejecting defendant's request for a unanimity instruction. A unanimity instruction is appropriate " 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' " (*People v. Russo, supra*, 25 Cal.4th at p. 1135.) The instruction is not required when the evidence "merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime." (*Ibid*.)

Defendant's discrete criminal event was his unlawful flight from Roseville police. The flight was continuous and not broken into discrete criminal events. The individual offenses defendant committed during the pursuit—running three stop signs, speeding, and possibly reckless driving—were the basis for satisfying section 2800.2's element of willful or wanton disregard for safety of persons or property, not separate chargeable offenses under section 2800.2. Divisions by the jury over these predicate crimes would be disagreements on the manner defendant evaded police in willful or wanton disregard of safety, not discrete criminal events of felony evasion.

Our reasoning mirrors that of *People v. Varela* (2011) 193 Cal.App.4th 1216 and *People v. Datt* (2010) 185 Cal.App.4th 942, opinions the trial court relied on to reject defendant's request for a unanimity instruction. The defendants in both cases were convicted of felony evasion under section 2800.2. In *Varela*, the defendant, while evading police on a "pocket bike," did not stop at stop signs, failed to signal before turning, and drove on the wrong side of the road and on the sidewalk. (*Varela*, at p. 1218.) In *Datt*, the evading defendant disregarded multiple stop signs and two stop lights, broke traction with the asphalt, drove on the shoulder, twice drove in the opposite lane of traffic, and drove at speeds between 45 and 100 miles per hour in a 25-mile-per-hour zone. (*Datt*, at p. 945.) Both defendants argued their juries had to agree unanimously on which traffic law violations were the predicate offenses under section 2800.2. (*Varela*, at p. 1220; *Datt*, at p. 949.)

Both Courts of Appeal disagreed with the defendants. A unanimity instruction was not required "merely because the jury may be divided on the exact way the defendant may be guilty of the charged count. [Citation.] Here the evidence shows but a single violation of section 2800.2. No unanimity instruction is required simply because the jury may not have agreed on the predicate violations." (*People v. Varela, supra*, 193 Cal.App.4th at p. 1220.) "[N]o unanimity instruction was required because the predicate violations were simply alternate ways of proving a necessary element of the

10

charged offense." (*Ibid*.) "The different Vehicle Code violations upon which the 'willful or wanton' element could have been premised were simply 'alternate ways of proving' that element, not separate chargeable offenses of reckless evading." (*People v. Datt, supra*, 185 Cal.App.4th at p. 950.)

Defendant contends *Varela* and *Datt* do not apply because there were two distinct criminal events which could have supported his conviction—either the officer's scenario of running three stop signs and speeding, or defendant's scenario of just speeding. Defendant claims the latter scenario, if relied on by the jury, was a different offense than that described by the Roseville officers.

The argument fails. No matter which scenario the jurors found true—reckless driving or traffic violations—both scenarios were alternate ways of proving the single element of willful or wanton disregard of safety. "Juror unanimity is not required simply because different theories of liability are presented." (*People v. Napoles* (2002) 104 Cal.App.4th 108, 115, fn. 5.)

Another related point of law justifies the trial court's decision not to give a unanimity instruction. A court is not required to give a unanimity instruction if the crime constitutes a continuous course of conduct. (*People v. Maury* (2003) 30 Cal.4th 342, 423.) This occurs when, among other times, " 'the acts are so closely connected that they form part of one and the same transaction, and thus one offense.' " (*People v. Napoles, supra*, 104 Cal.App.4th at p. 115.)

In that circumstance, this exception applies if the defendant tenders the same defense or defenses to each act closely connected in time and there is no reasonable basis for the jury to distinguish between them. (*People v. Crandell* (1988) 46 Cal.3d 833, 875, abrogated on another ground in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365; *People v. Datt, supra*, 185 Cal.App.4th at p. 951.)

The court in *Datt* ruled that this exception applied to its facts, and we agree the exception applies here. (*People v. Datt, supra*, 185 Cal.App.4th at p. 951.) Defendant's

acts were committed during the pursuit, which lasted for only 2.8 miles at speeds over 90 miles per hour. There was no reasonable basis for the jury to distinguish between the various violations. They all occurred during one dangerous short drive. And defendant's defense was the same as to all the acts—he was afraid of the tone of voice taken by the officers when they demanded he get out of the car, and he did not run the stop signs because he turned off early. The trial court was not required to give a unanimity instruction under these circumstances.

III

*Notice of Exposure to Indeterminate Sentence*

Generally, a defendant who has two or more strike priors and whose current offense is not a serious or violent felony is sentenced under the Three Strikes law to twice the term provided for punishment of the current offense, as if the defendant had only one strike prior. (Pen. Code, § 667, subd. (e)(2)(C), (e)(1).) But if the prosecution pleads and proves the defendant was previously convicted of certain sexually violent offenses ("super strikes"), the defendant is sentenced to the third strike sentence of an indeterminate life term with a minimum term that is the largest of three possible sentences, which in this case was an indeterminate term of 25 years to life. (Pen. Code, §§ 667, subd. (e)(2)(A), (e)(2)(C)(iv)(I); 1170.12, subd. (c)(2)(A), (c)(2)(C)(iv)(I).)

Some of defendant's prior convictions were super strike sexually violent offenses. Although the information alleged defendant was eligible for a sentence under the Three Strikes law, the prosecution sought leave to amend the information following the jury's verdict and after the jury was discharged to allege the super strike provisions under which defendant qualified for the indeterminate term. The trial court granted the prosecution's motion and sentenced defendant to the indeterminate term.

Defendant contends he was denied his due process right to notice in these circumstances of the laws under which he would be sentenced.

12

A.    Background

The original information alleged that defendant had previously been convicted of nine separately identified serious or violent felonies for purposes of the Three Strikes law under Penal Code section 667, subdivisions (b) through (i), and section 1170.12, subdivisions (a) through (d).  The information alleged that in 1980, defendant was convicted of one count of robbery.  (Pen. Code, § 211.)  The information also alleged that in 1985, defendant was convicted of assault with a deadly weapon, forcible sexual penetration while armed with a firearm, forcible rape in concert while armed with a firearm, forcible sodomy while armed with a firearm, two counts of robbery while armed with a firearm, attempted forcible rape in concert, and attempted forcible sodomy in concert.  (Pen. Code, §§ 245, subd. (a)(1); 289; 264.1; 211; 664/264.1; 664/286, subd. (d).)

For jury selection, each side was given 20 peremptory challenges due to the sentencing exposure.  During pretrial matters, the prosecutor stated defendant was being charged with "a life crime."  The prosecutor also said defendant "knows that he's doing a life sentence, and he knows that he's pending another life sentence here."

Following the jury's verdict, defendant waived his right to a jury trial on the bifurcated strike prior allegations.  The court discharged the jury.

The prosecutor then moved to amend the information.  The proposed amendment reduced the number of strike priors to eight, deleting the alleged conviction of forcible sodomy while armed with a firearm.  Otherwise, it charged the same strike priors that were alleged in the original information pursuant to Penal Code sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d).

The proposed amendment also alleged that defendant was eligible for a Three Strikes life sentence under Penal Code sections 667, subdivision (e)(2)(C)(iv)(I) and 1170.12, subdivision (c)(2)(C)(iv)(I), the super strike provisions.  Defendant's prior

13

convictions under Penal Code sections 264.1, 286, and 289 qualified as sexually violent offenses for purposes of this exception. (Pen. Code, § 667, subd. (e)(2)(C)(iv)(I); Welf. & Inst. Code, § 6600, subd. (b).)

Initially, the parties agreed that the prosecutor could make the motion to amend orally at the beginning of the bifurcated trial. But to avoid confusion, the prosecutor asked the court for time to file a written motion, and the court agreed. The court said that if defendant then wanted to object to the motion, it would hear the argument.

At the hearing on the motion, defendant objected. He planned to ask the court at sentencing to sentence defendant as a two-strike defendant under Penal Code section 667, subdivision (e)(1), so he would be asking the court essentially to strike the amendment to the information. Defendant argued that new legislation effective the following year would give the court more discretion to strike serious priors, so the court might not want to restrict itself in sentencing just to the statute alleged in the amendment.

The prosecutor argued in effect that even without the amendment, the Three Strikes sentence would still be alleged because the information alleged defendant suffered serious priors under Penal Code section 667, subdivisions (b) through (i), which included the super strike provisions. That allegation would also include sentencing defendant on any other applicable provision of the Three Strikes law if the court so found. The prosecutor proposed the amendment to ensure the proper code section for sentencing was specifically alleged. Defendant had been aware the entire time this case was a life case, as evidenced by the number of preemptory challenges the parties had at jury selection.

The trial court granted the motion to amend, and the court trial proceeded. The court found defendant had been convicted of the eight serious priors alleged in the amended complaint within the meaning of the Three Strikes law, including Penal Code sections 667, subdivision (e)(2)(C)(iv) and 1170.12, subdivision (c)(2)(C)(iv), the super strike provisions.

14

The court sentenced defendant to 25 years to life.  The sentence is consecutive to defendant's sentence for the Sacramento incident of 50 years to life.

B.    Analysis

Defendant contends the information did not provide him with adequate notice that the prosecution would seek the third strike indeterminate sentence against him.  He argues that although the original information properly pleaded his prior strikes and the sentence-doubling consequence, it did not expressly allege the statutes under which his priors qualified as super strikes and which subjected him to the third strike sentence.  The amended information, which expressly alleged the super strike exception, was not filed until after the verdict and after the jury was discharged.  And any awareness defendant may have had during trial that the prosecution was seeking an indeterminate term was inadequate without the express allegation in the information.

Although the Attorney General contends defendant has forfeited this argument by not objecting at trial on the ground he raises here, we choose to address the merits of his argument because if he is correct, his sentence is unauthorized.

"A defendant has a due process right to fair notice of the allegations that will be invoked to increase the punishment for his or her crimes."  (*People v. Houston* (2012) 54 Cal.4th 1186, 1227; see *People v. Mancebo* (2002) 27 Cal.4th 735, 747.)  The Three Strikes law sets forth what constitutes fair notice that the prosecution seeks a third strike sentence even though the current offense is not a strike.  The prosecution must plead and prove (1) the defendant has two or more prior strikes; and (2) " 'any' of the exceptions to second strike sentencing eligibility listed in subdivision (e)(2)(C)(i) through (iv) apply." (*People v. Tennard* (2017) 18 Cal.App.5th 476, 486.)

These requirements do not obligate the prosecution to plead the specific subsection under which the current nonstrike offense will be sentenced as a third strike. "The plain language of section 667, subdivision (e)(2)(C) only requires the prosecution to

15

'plead and prove' that 'any' of the exceptions to second strike sentencing eligibility set forth in subparagraphs (i) through (iv) apply.  Neither subdivision (e)(2)(C) nor any other part of section 667 requires the prosecution to *specifically* 'plead and prove' that an exception applies by using any particular language or by referencing the particular subparagraph of the exception or disqualifying factor." (*People v. Tennard, supra*, 18 Cal.App.5th at p. 486.)

The original information met this standard.  It identified prior strike convictions for Penal Code sections 264.1, 286, and 289 which qualified as super strikes, and it referred to Penal Code sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d).  These allegations were sufficient to satisfy the statute's pleading and proof requirements because they put defendant on notice that his prior convictions could be used as the basis for three strikes sentencing.  A specific reference to section 667, subdivision (e)(2)(A) or (C) was not required.

Defendant contends the information was inadequate under the holdings of *People v. Mancebo, supra*, 27 Cal.4th at pages 744-745, *People v. Nguyen* (2017) 18 Cal.App.5th 260, 266, and *People v. Saywers* (2017) 15 Cal.App.5th 713, 723.  These cases are distinguishable.  In each case, the statutory enhancements used as a basis for imposing an enhanced sentence were either not alleged at all or were insufficiently alleged.  (See *Mancebo*, at pp. 738-739, 742-745 [unalleged multiple-victim circumstance enhancement could not be basis for imposing "one strike" sentence despite the pleaded facts]; *Nguyen*, at pp. 262-263 [strike prior alleged as strike but not as a serious prior enhancement could not be basis for imposing the latter enhancement]; *Saywers*, at pp. 726-727 [information did not allege prior conviction as a strike].)

In addition to his understanding from the original information, defendant knew he was facing a possible indeterminate sentence when trial commenced.  Because of his sentencing exposure, each side was given 20 peremptory challenges for jury selection.  The prosecutor also stated at least twice that defendant was facing a life sentence.  These

16

facts, along with the allegations in the information, establish that defendant received fair notice of his possible third strike sentence.

IV

*Denial of Romero Motion*

Defendant challenges the trial court's denial of his *Romero* motion to dismiss his strike priors. (Pen. Code, § 1385, subd. (a).) He states the trial court's analysis was correct in a number of respects. The court correctly found that although he has a history of violence, the violence has not increased in seriousness since 1985. The court also correctly gave great weight to the nonviolent nature of the current offense, the fact that his strike priors were over five years old, and the fact that the 1980 robbery adjudication occurred when defendant was a juvenile.

Defendant argues the trial court abused its discretion by not giving proper weight to other relevant sentencing factors. He claims the court (1) misconstrued his future prospects to his detriment; (2) did not consider the remoteness of his strike priors; and (3) decided incorrectly not to apply Penal Code section 1835, subdivision (c)(2)(C), which requires courts to dismiss any "enhancement" that results in a sentence of over 20 years.

We review the trial court's denial of a motion to strike a prior conviction under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) The defendant must show that the court's decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

"A trial court deciding, or appellate court reviewing the decision, whether to strike a prior felony conviction allegation under [Penal Code] section 1385, subdivision (a), 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in

17

whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' (*People v. Williams* (1998) 17 Cal.4th 148, 161 [].) '[T]he circumstances must be "extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls . . . ." ' ([*People v.*] *Carmony*, *supra*, 33 Cal.4th at p. 378.) As such, in reviewing the trial court's decision, 'the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary.' (*Ibid.*)" (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 856-857.)

Two of the factors that defendant contends the trial court did not properly weigh, remoteness of his strikes and his sentence exceeding 20 years, arise under Penal Code section 1385, subdivision (c) (subdivision (c)). This subdivision lists a number of mitigating factors a court must consider before imposing an enhancement. Our court has held that subdivision (c)'s provisions do not apply to Three Strikes sentencing, as prior convictions are not enhancements. (*People v. Burke* (2023) 89 Cal.App.5th 237, 244.)

Nonetheless, had subdivision (c) applied, the trial court did not abuse its discretion in its consideration of those factors. The court considered that defendant's strike priors were remote by being over five years old and that his 1980 robbery prior occurred when defendant was a juvenile. (Pen. Code, § 1385, subd. (c)(2)(G), (H).) The court also gave great weight to these facts. It did not abuse its discretion in its analysis or application of these factors.

The trial court also did not abuse its discretion concerning the fact defendant's sentence would be more than 20 years. Under subdivision (c), the fact that applying the enhancement could result in a sentence of over 20 years is a factor entitled to great weight in favor of dismissing the enhancement. (Pen. Code, § 1385, subd. (c)(2)(C).) Although the statute states that in such an instance, the enhancement must be dismissed, the trial court interpreted the provision as not eliminating the court's discretion.

18

Defendant asserts the trial court erred in claiming discretion not to apply the 20-year provision. He is incorrect. The factor is a mitigating circumstance for the court to consider in exercising its discretion to strike an enhancement in furtherance of justice. It need not be considered when the court finds dismissing the enhancement would endanger public safety. (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18-19.) The trial court correctly interpreted the provision and, as required by the statute, gave the factor great weight. It did so even though it ultimately found that dismissing the strike allegations would endanger public safety.

Finally, defendant contends the trial court misconstrued his "future prospects" because it misapprehended the length of his sentence for the Sacramento incident. His probation report, which the trial court considered, stated his Sacramento sentence was 25 years to life, when in fact it was 50 years to life. Defendant claims that as a result, the "net effect" of the life sentence in this matter was greater than the court recognized. Defendant argues the trial court would have been justified in striking the prior convictions in this case because they had been accounted for in the Sacramento case. That sentence already made it unlikely defendant would ever return to society, and if he did, his prospects for committing future offenses would be significantly diminished.

The trial court did not abuse its discretion in the manner it considered defendant's future prospects. The trial court was not unaware of defendant's sentence in the Sacramento incident. The prosecutor's sentencing briefs, which the court read and considered, correctly stated that defendant's Sacramento sentence was 50 years to life. Moreover, the court considered defendant's future prospects as a law-abiding and contributing member of society, not just whether his prospects for committing offenses in the future would be diminished. It stated that although defendant wanted to become a productive member of society, his prospects for a stable, crime-free life were "difficult" due to his history of criminal convictions and incarceration, which extended beyond his strike priors. Defendant had some prospect of employment because he had prior

19

experience in the sandblasting business, but his prospects would be limited due to his criminal history. By conducting this analysis, the trial court did not abuse its discretion in analyzing defendant's future prospects as part of ruling on defendant's *Romero* motion.

DISPOSITION

The judgment is affirmed.

_____

HULL, Acting P. J.

We concur:

_____

ROBIE, J.

_____

HORST, J.[*]

_____

[*] Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.